*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0056P (6th Cir.)
File Name: 04a0056p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

JAMES BULTEMA,
　　　　*Plaintiff-Appellant,*

　　*v.*

UNITED STATES OF AMERICA,
　　　　*Defendant-Appellee.*

No. 02-3490

———————

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 01-00951—David D. Dowd, Jr., District Judge.

Argued: October 31, 2003

Decided and Filed: February 23, 2004

Before: MOORE and ROGERS, Circuit Judges;
FORESTER, Chief District Judge.[*]

———————

## COUNSEL

**ARGUED:** Mark L. Wakefield, LOWE, EKLUND, WAKEFIELD & MULVIHILL, Cleveland, Ohio, for

———————

[*] The Honorable Karl S. Forester, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

Appellant. Marlon A. Primes, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Mark L. Wakefield, LOWE, EKLUND, WAKEFIELD & MULVIHILL, Cleveland, Ohio, for Appellant. Marlon A. Primes, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

———————

## OPINION

———————

ROGERS, Circuit Judge. While sleeping, James Bultema fell from the top bunk of his federal prison bed and injured his knee. Bultema had previously been given a form that required him to receive a bottom bunk, but he did not deliver this form to the prison official in charge of his unit before the accident. Bultema sued the United States under the Federal Tort Claims Act, alleging that several acts of prison negligence caused his injury. The district court granted summary judgment on behalf of the Government. The Government contends that summary judgment was proper because of the discretionary function exception to liability under the Federal Tort Claims Act, and alternatively, because comparative negligence on the part of Bultema bars recovery under Ohio law. Because the discretionary function exception does not apply to the limited question of whether the prison was negligent in not giving Bultema the proper number of forms and oral instructions once he received permission to get a bottom bunk, and because there is a material question of fact regarding Bultema's comparative negligence, we reverse the decision of the district court.

### Facts

After years of selling insurance, Bultema was arrested and charged with bank fraud, to which he subsequently pled guilty. As part of his sentence he was imprisoned, for the first

time in his life, to serve a six month sentence at the federal minimum security prison in Elkton, Ohio.

At Elkton, Bultema was initially assigned a top bunk within Unit 1-A. The bunk beds at Elkton consist of metal frames with foam-type mattresses and have two levels—a bottom bunk that is approximately eighteen to twenty-four inches off the ground and a top bunk that is considerably higher. The bunks typically have a ladder on one end of the bed or on the side of the bunk. The bunks lack rails or guards of any kind, and inmates occasionally use "prison tools" to remove the ladders and create makeshift rails. Although the prison staff did not put rails on the beds for fear that they could be removed and used as weapons or as a means of escape, the staff did nothing to prevent the switching of the ladders.

After approximately three weeks in prison, Bultema was given a medical examination by the prison's physician's assistant, Danny Hall. During this examination, Hall issued Bultema an "Idle, Convalescent and Change in Work Classification Status" form, also known as a "bottom bunk pass." The bottom bunk pass states: "① no climbing ② Please allow bottom bunk (medical) while @ FCI Elkton." Apparently, although Bultema had no problem walking or playing touch football games, these conditions were given to Bultema because of his past medical history.

Bottom bunks are highly sought after at Elkton, and the prison keeps a waiting list based on seniority to facilitate the assignments of bottom bunks. However, if an inmate receives a bottom bunk pass for medical reasons, he is immediately assigned a bottom bunk, even if there are no vacant bottom bunks, because the medical bottom bunk pass takes priority over those who were assigned bottom bunks from the seniority list.

Typically, the medical staff would complete the pass in quadruplicate. One copy would be placed in his medical file, one copy would go to records for entry into the prison

computer system, and the prisoner would be given two copies: one to be given to unit management and the other to be kept by the prisoner for his records. Once an inmate received a bottom bunk pass, he would be told to alert the prison unit management that he had received a bottom bunk pass. Usually, the inmate would then quickly take the copy to unit management, and a new bunk would be assigned.

Bultema claims that he only received one copy of the bottom bunk pass from Hall, the pink copy, and that he put it among his things for safekeeping.[1] He alleges that because no one gave him contrary instructions, he assumed that prison officials would be notified of the change in his status without any affirmative action on his part, and that he would be changing bunks soon. Since Bultema did not tell unit management about his bottom bunk pass, Janel Fitzgerald, his Unit A-1 counselor, who was in charge of bunk changes, was not notified before the accident that she needed to reassign Bultema's bunk.

In the meantime, Fitzgerald was made aware of some difficulties Bultema was having with his bunk. After many sleepless nights on his mattress, which had a downward tilt toward the wall, Bultema asked Fitzgerald about the possibility of receiving a new mattress. Fitzgerald informed him that there were currently no spare mattresses, but that she would try and get him one. Fitzgerald claims that Bultema told her that he did not wish to switch top bunk beds to correct the mattress problem because he did not want to lose his bunkmate. Bultema denies this assertion.

---

[1]The Government claims that Bultema was given instructions to give a copy to Janel Fitzgerald, his unit counselor. The Government bases this allegation on the fact that at the bottom of the pass it states ". . . Yellow copy — Detail Officer    Pink copy — Inmate . . ." According to the Government this should have alerted Bultema, as a very detail-oriented ex-insurance agent, that he needed to notify his unit counselor of his bunk status change.

At this point, Bultema, with the help of other inmates, apparently took matters into his own hands, and on April 1, 1998, he switched the mattress on his bunk with that of a mattress from an apparently empty bunk. That evening, Bultema settled into his new bunk and went to sleep. About 2:30 a.m., Bultema awoke on the floor after having fallen off of his bed. His knee hit the cement floor and was seriously injured.

After his release from prison, Bultema filed a personal injury claim against the Federal Bureau of Prisons under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* He alleges that the United States was negligent in a number of respects. The United States filed a motion for summary judgment on the basis of the discretionary function exception to the FTCA and Bultema's comparative negligence. The district court granted this motion. *See Bultema v. United States*, 195 F. Supp. 2d 1001 (N.D. Ohio 2002). Bultema filed a timely notice of appeal.

## Discussion

This court reviews a lower court's grant of summary judgment *de novo*. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). The evidence should be viewed in the light most favorable to the nonmoving party, and summary judgment should only be granted where there is no genuine issue of material fact. *Id.* In a properly supported response to a motion for summary judgment, the nonmoving party "must show that there is, indeed, a genuine issue for trial." *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). In considering a motion for summary judgment, "[t]he judge's function . . . is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987).

## I. Discretionary Function Exception to Federal Tort Claims Act Liability

Negligence in not directing Bultema to give a copy of his pass to unit management, if proven, would amount to negligence in following a nondiscretionary policy, and that particular negligence claim is accordingly not protected by the discretionary function exception to FTCA liability. Therefore, the district court should not have granted summary judgment to the Government. The Government relies on the discretionary function exception, which precludes tort liability on the part of the United States for

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

There is a two-step test to determine whether the discretionary function exception is applicable. *See United States v. Gaubert*, 499 U.S. 315, 322-23 (1991); *Reetz v. United States*, 224 F.3d 794, 795-96 (6th Cir. 2000). A court first must make a "determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment of choice." *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997). The court only needs to consider the second step if the action was discretionary under the first step. *Reetz*, 224 F.3d at 796. Under the second step, if the conduct was of the type that Congress intended for the discretionary function exception to include, then the exception is applicable. *Id.* The intent of Congress was "to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and

political policy." *Rosebush*, 119 F.3d at 441 (internal quotation omitted).

Examples of exercises of discretionary functions under this analysis include a decision to institute a program of producing and exporting fertilizer, *Dalehite v. United States*, 346 U.S. 15, 37-38 (1953); a decision to install a system of coastal navigational aids, *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955); a Federal Aviation Administration ("FAA") policy decision to spot check airplanes rather than to inspect them in detail, *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 815-19 (1984); a U.S. Forest Service policy of not placing protective railings around campground fire pits, *Rosebush*, 119 F.3d at 443-44; and a U.S. Forest Service policy of not marking off-road-vehicle trails that are closed (but rather marking only those that are open), *Reetz*, 224 F.3d at 797.

Where a particular government action is a deliberate or necessary result of a discretionary general policy, such that a tort suit based on the particular act or omission would amount to a challenge to the protected across-the-board policy, then the discretionary function exception applies as well. Thus, the discretionary function exception protected the United States against suits for the use of a high bagging temperature fixed by a discretionary plan to manufacture fertilizer, *Dalehite*, 346 U.S. at 38-41, for the failure of the FAA to inspect a particular aircraft because of the FAA's spot-check policy, *Varig Airlines*, 467 U.S. at 819-20, and for a particular failure of the Forest Service to mark an off-road-vehicle trail as closed, *Reetz*, 224 F.3d at 795.

But where a particular government action is not a necessary result of such a general policy, the act does not necessarily amount to an exercise of a discretionary function merely because carrying out the general policy provided the opportunity for the negligent act. Thus the United States can be liable for the Coast Guard's negligent maintenance of a navigational aid, even though the decision to employ such

aids was an exercise of a discretionary function. *Indian Towing*, 350 U.S. at 69. Negligence in maintaining the aid is not a necessary concomitant of the decision to employ such aids. *A fortiori*, if a particular act *violates* a governmental policy, the act cannot be protected under the discretionary function exception by the fact that the violated policy itself was an exercise of a discretionary function.

In order to undertake a proper discretionary function analysis, then, we must first determine the exact conduct at issue. *Rosebush*, 119 F.3d at 441. In the court below, Bultema not only claimed that the failure to provide Bultema with a copy of the pass along with directions on whom to give it to, but also appeared to challenge the prison's policy of not having rails on upper bunks and the prison's policy of relying on prison inmates to notify unit management of the issuance of bunk passes, rather than having the issuer of the pass notify unit management directly. Bultema now properly concedes that such claims are barred by the discretionary function exception. The decision generally not to have bed rails, and the decision to have inmates notify unit management of a bunk pass, both involve the type of across-the-board policy-making judgment that the discretionary function exception was meant to leave to federal administrators, in this case prison administrators. As the district court reasoned,

> the policy-makers apparently decided that the quickest and most efficient method for communicating a medically-necessary bottom bunk assignment to the unit officer was to utilize the inmate himself. . . . In fact, this policy has intuitive appeal especially where, as here, it deals with something that every inmate apparently wants, i.e., a bottom bunk.

*Bultema v. United States*, 195 F. Supp. 2d 1001, 1008 (N.D. Ohio 2002). The district court also reasoned properly that

> with respect to [the] claim that the bunk beds should have had ladders and/or guardrails, this, too, is a

discretionary call to be made by prison administrators. There were valid safety and security concerns relating to the beds at issue. Guard rails, and sometimes ladders, are not included because of the danger that they can be broken off and used as weapons or escape devices.

*Id.* In short, these policies are akin to the spot-check policy in *Varig Airlines* and the no-campfire-rail policy in *Rosebush*. As Bultema now concedes, the district court properly granted summary judgment on these claims as barred by the discretionary function exception.

Bultema's remaining claim, however, is that the prison was negligent in carrying out its bunk-pass-notification policy. The allegedly negligent act or omission is not a necessary concomitant of the prison's notification policy, but rather is allegedly in contravention with, or at least not required by, that policy. Bultema claims that the prison was negligent in not informing him of the process by which he would obtain his bottom bunk after receiving a pass. In particular, the prison allegedly failed to provide him with verbal instructions along with two copies of the bottom bunk pass. So limited, Bultema's claim is not barred by the discretionary function exception.

First, the discretionary function exception arguably does not apply to Bultema's limited claim because Elkton's policy for handling bottom bunk passes did not give the medical staff or the unit management any discretion, but rather dictated their actions. As the Supreme Court has explained,

the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect.

*Berkovitz v. United States,* 486 U.S. 531, 536 (1988). The allegedly negligent behavior of the prison's employees in failing to instruct Bultema would not be discretionary under this analysis. Therefore, the discretionary function exception would be inapplicable as to the failure of the prison to notify Bultema of his responsibility to tell unit management and the failure to give him two copies of the pass.

Moreover, under the second step of a discretionary function analysis, even if the prison employees retained some discretion in carrying out the bunk-pass policy, that discretion was not of the type that the discretionary function exception was intended to protect. The alleged failure to direct Bultema to give a copy of his pass to unit management was a particular act or omission that was not required by the across-the-board bunk-bed policy, and indeed it was arguably in violation of that policy. It was therefore not protected by the discretionary function exception. The failure is instead analogous to the Coast Guard's failure to maintain a particular navigational aid in *Indian Towing*.[2] The discretionary function exception therefore did not warrant summary judgment for this limited claim.

## II. Comparative Fault

The United States argues that summary judgment should be affirmed on the alternative ground of Bultema's comparative

---

[2]Limiting Bultema's claim to one for failure to direct him adequately in the processing of his bunk pass may of course make it more difficult for him to recover under Ohio tort law. Bultema must demonstrate not only that the alleged omission in failing to direct him actually occurred, that it violated the standard of care, and that it was the cause in fact of his injury, but also that his physical injury was a reasonably foreseeable result of the limited allegation of negligence permitted by the FTCA in this case. *See Strother v. Hutchinson*, 423 N.E.2d 467, 469-71 (Ohio 1981); *Bohme, Inc. v. Sprint Int'l Communications Corp.*, 686 N.E.2d 300, 303-04 (Ohio Ct. App. 1996). Our holding that the discretionary function exception does not apply has no bearing on whether or not Bultema can meet these requirements.

fault.  Bultema has, however, presented enough evidence to overcome a motion for summary judgment on the basis of comparative negligence.  Ohio's comparative negligence law prohibits plaintiffs from recovering if the plaintiff's own negligence outweighs that of the defendants.  In other words, "[i]n certain cases, summary judgment is appropriate if the Plaintiff's own negligence, as a matter of law, outweighs any negligence of the Defendant." *Cervelli v. Thompson/Center Arms*, 183 F. Supp. 2d 1032, 1043 (S.D. Ohio 2002).  If reasonable minds can differ as to a plaintiff's contributory negligence, then summary judgment is inappropriate. *See Blevins v. Doe,* 279 F. Supp. 2d 922, 931 (N.D. Ohio 2003).

The Government argues that reasonable minds could only decide that Bultema's injuries were caused by his own negligence because he was a detail-oriented person, believed that Fitzgerald was friendly and approachable, and failed to notify her of his bottom bunk pass.  Further the Government contends that Bultema took it upon himself to switch mattresses instead of requesting a bottom bunk because he did not want to lose his bunkmate.  It is true that Bultema did not notify unit management of his bottom bunk pass, and this failure was certainly a cause of his injury.

However, Bultema has presented some evidence, if viewed in the light most favorable to him, that indicates that he was not aware of the policy because of negligence on the part of the prison.  For example, Bultema claims that he was never informed of the policies of the prison in regard to the bottom bunk pass, and that he wanted to avoid becoming a "troublemaker."  In addition, although the Government states that he received verbal instructions as to what to do with his bottom bunk pass, Hall, in his deposition, asserts that he has "no recollection" of giving Bultema duplicate copies of the bottom bunk pass.  Bultema moreover states that he was only given one copy of the bottom bunk pass, and that he received no verbal instructions.  Accordingly, Bultema has provided an explanation that the fact-finder might believe for Bultema's failure to deliver a copy of his bottom bunk pass to unit

management.  Because there is contradictory evidence as to Bultema's negligence and because it is the fact-finder's duty at trial to weigh the evidence and assess the credibility of the witnesses, it was not appropriate to grant summary judgment solely on the basis of comparative negligence in this case.

## Conclusion

The judgment of the district court is REVERSED and the case is remanded for further consideration.