*938 OPINION
KAREN NELSON MOORE, Circuit Judge.
This case arises out of the execution of a field experiment aimed at improving the government’s technical capacity to respond to Improvised Explosive Devices (IEDs). Plaintiff-Appellant Debra R. Kohl (“Kohl”) seeks recovery for injuries allegedly sustained due to negligence of a federal employee operating a winch while collecting debris generated by the planned detonation of explosives during this government-funded research experiment. Kohl appeals the district court’s determination that her claims were barred by the discretionary-function exception to the Federal Tort Claims Act (“FTCA”), 28 U.S.C. §§ 1346(b), 2671 et seq., and that the court thus lacked subject-matter jurisdiction. Because we conclude that the government’s decisions about how to extract evidence from the site of the explosions, and what types of equipment to use to do so, are shielded from liability by the discretionary-function exception, we AFFIRM the judgment of the district court.
I. BACKGROUND
On December 4, 2007, Kohl, a certified bomb technician with the Hazardous Devices Unit of the Metropolitan Nashville Police Department (“MNPD”), participated in a research experiment funded by the U.S. Department of Defense at the Tennessee State Fire Academy in Bell Buckle, Bedford County, Tennessee. The experiment involved constructing and detonating explosive devices in vehicles and then collecting post-blast debris for laboratory analysis as forensic evidence. Kohl v. United States, No. 3-09-1190, 2011 WL 4537969, at *1 (M.D.Tenn. Sept. 29, 2011) (unpublished opinion). This experiment was part of a larger research project conducted by scientists working at Oak Ridge National Laboratory, managed by the University of Tennessee-Battelle for the Department of Energy. R. 41 (Pl.’s Response to Def.’s Stmt, of Undisputed Material Facts [hereinafter “Undisputed Material Facts”] at 1) (Page ID # 661). Explosives Enforcement Officers of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (“ATF”), Jason Harrell and Alex Guerrero, assisted and participated in the experiment.
Following the detonation of the explosives, and after an “all-clear” was given, participants in the project, including Kohl, entered the explosives range to inspect the vehicles. Id. at 4 (Page ID # 664). Kohl and Officer Todd Mask, another MNPD bomb technician participating in the project, proceeded to investigate one of the vehicles, a minivan. Id. at 4-5 (Page ID # 664-65). Kohl searched the passenger’s side of the minivan for evidence, while Mask attempted to search the driver’s side of the vehicle. Id. at 5 (Page ID # 665). However, the driver’s side door of the minivan had “buckled,” and as a result, it would not open. R. 38-6 (Mask Dep. at 26:2-3) (Page ID # 636). The investigation team decided to try to access the inside of the van by using a winch on the driver’s side door. R. 41 (Undisputed Material Facts at 6) (Page ID # 666). After a first failed attempt to winch the door, a second attempt was made. R. 38-5 (Kohl Dep. at 71:8-18) (Page ID # 594). While other team members were preparing to winch the door a second time, Kohl testified that she returned to the passenger’s side door of the van and continued searching for evidence. Id. at 72:15-18 (Page ID # 595). During this time, Kohl was “leaning into the passenger side of the vehicle.” R. 1 (Compl. ¶ 10) (Page ID # 3).
Then, although the record is not clear about exactly how Kohl came into contact with the vehicle, Kohl testified that she *939 remembers feeling “pain in the top of [her] head” and that she “saw stars.” R. 38-5 (Kohl Dep. at 74:8-9) (Page ID # 597). The complaint alleges that “[d]ue to the winching, the door came loose and the door frame of the vehicle crashed into Ms. Kohl’s head.” R. 1 (Compl. ¶ 14) (Page ID #3). After seeking medical care the following day, Kohl was referred to a neurologist, who diagnosed her with “post-coneussive syndrome with persistent headaches and cognitive changes.” Kohl, 2011 WL 4537969, at *2 (internal quotation marks omitted). Since the incident, Kohl has not been employed. Id.
Kohl filed this action on December 16, 2009 in the U.S. District Court for the Middle District of Tennessee under the FTCA, 28 U.S.C. §§ 1346(b), 2671-2680, seeking damages. R. 1 (Compl. ¶ 3) (Page ID # 1). The complaint alleges that federal employees were negligent in “operating] the winch in an unsafe manner,” “failing] to warn Plaintiff of dangers regarding the winch,” “conducting] the operation, including winching of the vehicle, without proper safety protocols,” and by “failing] to use reasonable and due care to prevent injury to Plaintiff.” Id. ¶ 19 (Page ID # 4). Defendant United States filed a motion to dismiss or, alternatively, for summary judgment on January 7, 2011, in part on the basis that the district court lacked subject-matter jurisdiction. R. 34 (Def.’s Mot. to Dismiss at 1) (Page ID # 140). Finding that the conduct at issue in this case falls within the discretionary-function exception to the FTCA, the district court dismissed Kohl’s claims for lack of subject-matter jurisdiction. Kohl, 2011 WL 4537969, at *9. Kohl timely filed an appeal on October 5, 2011. R. 72 (Notice of Appeal) (Page ID # 1282).
II. ANALYSIS
A. Discretionary-Function Exception: Legal Framework
At issue is whether the district court erred in finding that it lacked subject-matter jurisdiction over Kohl’s claims. We review de novo a district court’s dismissal based on the application of the discretionary-function exception to the FTCA.[1] Rich v. United States, 119 F.3d 447, 449 (6th Cir.1997); Rosebush v. United States, 119 F.3d 438, 440 (6th Cir.1997).
Sovereign immunity generally bars claims against the United States without its consent. See Montez ex rel. Estate of Hearlson v. United States, 359 F.3d 392, 395 (6th Cir.2004) (citing United States v. Orleans, 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976)). Congress, through the FTCA, waived this governmental immunity for claims brought
for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
28 U.S.C. § 1346(b)(1). The FTCA’s waiver of immunity is limited, and contains a series of exceptions. Id. § 2680. One of these exceptions — known as the discretionary-function exception-states that the *940 FTCA’s waiver does not apply to “[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.” Id. § 2680(a). If a claim falls within this exception, then federal courts lack subject-matter jurisdiction, and the claim must be dismissed. See Feyers v. United States, 749 F.2d 1222, 1225 (6th Cir.1984). This appeal concerns whether the conduct at issue in Kohl’s claims falls within the discretionary-function exception.
Determining whether a claim falls within the discretionary-function exception involves a two-step test. See United States v. Gaubert, 499 U.S. 315, 322-23, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); Rosebush, 119 F.3d at 441. The first step “requires a determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice.” Rosebush, 119 F.3d at 441 (citing Gaubert, 499 U.S. at 322-23, 111 S.Ct. 1267). If there was such a violation of a mandatory regulation or policy, then the discretionary-function exception will not apply, because “there was no element of judgment or choice,” id., and thus “the employee has no rightful option but to adhere to the directive.” Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).
If, on the other hand, there was room for judgment or choice in the decision made, then the challenged conduct was discretionary. See Rosebush, 119 F.3d at 441. In such a case, the second step of the test requires a court to evaluate “whether the conduct is ‘of the kind that the discretionary function exception was designed to shield’ ” from liability. Id. (quoting Gaubert, 499 U.S. at 322-23, 111 S.Ct. 1267). The discretionary-function exception is meant “to prevent judicial ‘second-guessing’ of ... administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.” United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).
The discretionary-function exception’s scope extends beyond high-level policymakers, and includes government employees at any rank exercising discretion. Id. at 813, 104 S.Ct. 2755 (“[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.”). “A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions.” Gaubert, 499 U.S. at 325, 111 S.Ct. 1267. Even where government action is taken on the day-to-day operational level, and implements broader governmental objectives, if that action involves choice or judgment that is “susceptible to policy analysis,” then it falls within the discretionary-function exception. Id. “We also consider the fact that ‘[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent’s acts are grounded in policy when exercising that discretion.’ ” Sharp ex rel. Estate of Sharp v. United States, 401 F.3d 440, 443 (6th Cir.2005) (quoting Gaubert, 499 U.S. at 324, 111 S.Ct. 1267).
B. Application to Kohl’s Case
In determining whether Kohl’s claims fall within the discretionary-function exception, “the crucial first step is to determine exactly what conduct is at issue.” Rosebush, 119 F.3d at 441. The *941 parties disagree about how to characterize appropriately the conduct. Kohl argues that the relevant conduct is “use of a winch on a large minivan while people are working in and around the minivan, and whether the Government employee sufficiently alerted those people before doing so.” Appellant Br. at 21-22; see id. at 22 (“Plaintiffs claim is for operator error in using machinery.”). Kohl’s theory is that the context of the use of the winch is irrelevant to the analysis of the discretionary-function exception. Using this narrow characterization of the conduct at issue, Kohl goes on to argue that the ministerial act of using a winch does not involve policy-related judgments, and thus is not shielded from liability by the discretionary-function exception. See id. at 22-23. The Government, on the other hand, emphasizes the context in which the alleged injury occurred: a field experiment which recreated a bomb scene and required trained bomb technicians to recover evidence from the scene. Using this broad characterization, the Government argues that the decisions related to how best to conduct the experiment did involve policy-related judgments and thus are shielded from liability. See Appellee Br. at 22-23. The Government’s theory appears to be tantamount to a contention that every decision, “[a]t every level,” in the context of the post-blast investigation would be shielded from liability. Appellee Br. at 25-26. Each of these views is too extreme.
Kohl’s narrow characterization must be rejected, because it “collapses the discretionary function inquiry into a question of whether the [government] was negligent.” Rosebush, 119 F.3d at 442. “Negligence, however, is irrelevant to our inquiry at this point.” Id. We rejected a similarly narrow approach in Rosebush, which involved a child who was severely burned when she fell into a fire pit on a campground site maintained by the United States Forest Service. Plaintiff argued that the Forest Service was negligent in “failing] to make the fire pit safe for unsupervised toddlers, and to warn of the dangers of the fire pit.” Id. at 441. The Rosebush court held that this characterization was too narrow, and that instead, the conduct at issue was the maintenance of the Forest Service’s campsites and fire pits. See id. at 442. Similarly, in Bell v. United States, a panel of this court in an unpublished opinion rejected a narrow characterization of the conduct at issue for purposes of analysis under the discretionary-function exception. See 238 F.3d 419, 2000 WL 1720932, at *3-4 (6th Cir. Nov. 6, 2000). Bell involved a slip and fall due to a wet floor of a lobby of a post office building, which was open to the public even during hours when the Post Office itself was closed and unstaffed. Bell, 2000 WL 1720932, at *1. Suing the United States under the FTCA to recover for her injuries, the plaintiff argued that the relevant conduct was the “Post Office’s lack of efforts to maintain the premises in a reasonably safe manner.” Id. at *3. Again, we concluded that this formulation was too narrow, instead holding that “the conduct at issue here is the [] postmaster’s conduct in deciding under what circumstances to allow the lobby area to remain open to the public at times when the service windows were closed.” Id. at *4; see also Merando v. United States, 517 F.3d 160, 168 (3d Cir.2008) (rejecting a narrow framing of the conduct at issue as whether the government had discretion “not to find and remove the hazardous tree,” instead concluding that the “relevant issue” was whether the government “had discretion in formulating and executing [the hazardous tree management] plan”); Autery v. United States, 992 F.2d 1523, 1527-28 (11th Cir.1993) (rejecting plaintiffs contention that the relevant conduct *942 was the allegedly negligent manner in which the park’s employees carried out a plan to remove hazardous trees, instead concluding that the relevant issue was “[w]hether park personnel had discretion in executing that plan”).
Kohl’s formulation of the conduct at issue is inappropriate for the same reason: by framing the question as whether the ATF employee operated the winch in a safe manner, Kohl “begs the question.” Autery, 992 F.2d at 1528. To characterize the issue as whether the ATF employees had discretion to operate the winch in an unsafe manner is to ask whether the employees had discretion to be negligent. As we stated in Rosebush, negligence is irrelevant at this stage of the inquiry. Rosebush, 119 F.3d at 442. The issues of whether the ATF employee who operated the winch was negligent, and whether the safety precautions taken were reasonable, are separate inquiries from the analysis of the discretionary-function exception. “It is the governing administrative policy,” rather than the negligence of a particular employee, “that determines whether certain conduct is mandatory for purposes of the discretionary function exception.” Autery, 992 F.2d at 1528. Thus, the conduct at issue must be framed in terms of the scope of administrative authority to use discretion in executing the research experiment. More properly formulated, the conduct at issue is “the recovery of forensic evidence and the necessary actions taken to facilitate that recovery, including actions taken to dislodge the door of the minivan so that evidence could be recovered.” Kohl, 2011 WL 4537969, at *7. Our analysis thus focuses on whether ATF’s actions in collecting the forensic evidence from the field test, including decisions about what equipment to use, are protected by the discretionary-function exception.
Regarding the first step of the discretionary-function-exception test, neither party in this case argues that there was a mandatory policy or regulation at issue. See Appellant Br. at 17 (“It is undisputed that there was no mandatory regulation or policy governing the federal employees’ conduct in this case[.]”); Appellee Br. at 19. Because there was no specific regulation or policy governing the post-blast investigation, the challenged government conduct involved discretion.[2] See Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954. Thus, the district court properly concluded that the “relevant inquiry” is at the second step of the two-part discretionary-funetion-exception test. Kohl, 2011 WL 4537969, at *6.
The second step of the test requires a determination of whether the conduct is “ ‘of the kind that the discretionary function exception was designed to shield’ ” from governmental liability. Gaubert, 499 U.S. at 322-23, 111 S.Ct. 1267 (quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954). It is important to note that framing the conduct more broadly, as we have done, does not imply that every *943 action taken in connection with a government program will be brought under the umbrella of the broader policy-related judgments involved in the program. See Bultema v. United States, 359 F.3d 379, 383 (6th Cir.2004) (explaining that an “act does not necessarily amount to an exercise of a discretionary function merely because carrying out the general policy provided the opportunity for the negligent act”). Although difficult to draw, there is a line between conduct “of the kind that the discretionary function exception was designed to shield,” Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954, and the sorts of run-of-the-mill torts, which, while tangentially related to some government program, are not sufficiently “grounded in regulatory policy” so as to be shielded from liability. Gaubert, 499 U.S. at 325 n. 7, 111 S.Ct. 1267; see also Totten v. United States, 806 F.2d 698, 700 (6th Cir.1986) (explaining that Congress, in the discretionary-function exception, “was drawing a distinction between torts committed in the course of such routine activities as the operation of a motor vehicle and those associated with activities of a more obviously governmental nature”). Where an act “cannot be said to be based on the purposes that the regulatory regime seeks to accomplish,” the discretionary-function exception will not apply. Gaubert, 499 U.S. at 325 n. 7, 111 S.Ct. 1267. The Gaubert Court used negligent driving by a government actor on government business as an example of conduct that would not be shielded by the discretionary-function exception. Id. Driving a car, while it “requires the constant exercise of discretion,” is not sufficiently connected to regulatory policy to fall within the discretionary-function exception. Id.
The key question in this appeal is whether the conduct at issue here was sufficiently based on the purposes that the regulatory regime — here the research experiment — sought to accomplish. See id. Although this is a close case, we conclude that the answer to this question is yes. The decision to use a winch was part of the decisionmaking involved in deciding how best to conduct the post-blast investigation. Cf. Konizeski v. Livermore Labs (In re Consol. U.S. Atmospheric Testing Litig.), 820 F.2d 982, 993-95 (9th Cir.1987) (finding that claims of negligence for failure to maintain sufficient safety precautions during “inherently dangerous” field testing of nuclear weapons were barred by the discretionary-function exception); Creek Nation Indian Hous. v. United States, 677 F.Supp. 1120, 1124-26 (E.D.Okla.1988) (finding, in a case involving an explosion of bombs being transported by a commercial carrier, that the discretionary-function exception barred negligence claims against the United States for alleged failure to take adequate safety precautions regarding transportation of explosives).
The planning and execution of the research experiment is susceptible to policy analysis, including judgments about how to respond to hazards, what level of safety precautions to take, and how best to execute the experiment in a way that balanced the safety needs of the personnel and the need to gather evidence from the vehicles. See Rosebush, 119 F.3d at 444 (explaining that even if there is no indication “that policy concerns were the basis of a challenged decision, the discretionary function exception applies if the decision is susceptible to policy analysis”) (citing Myslakowski v. United States, 806 F.2d 94, 97 (6th Cir.1986)). Decisions about how to execute the experiment include judgments as to what kinds of equipment to use to extract the evidence for forensic laboratory analysis. These equipment-related decisions were “intimately related” to the execution of the field experiment — in other *944 words, judgments as to how to extract the evidence from the vehicles after the bombs were detonated, including what equipment to use, were necessary to the execution of the project. See Graves v. United States, 872 F.2d 133, 137 (6th Cir.1989). Thus, a challenge to the use of a particular piece of equipment, i.e., the winch, would amount to a challenge as to the overall execution of the research project. See Bultema, 359 F.3d at 383.[3] The conduct at issue is thus unlike the Gaubert Court’s example of driving a car in connection with a government mission; the ATF employee’s use of the winch was sufficiently related to the purposes that the post-blast investigation sought to accomplish to fall within the discretionary-function exception.
We have previously concluded that in executing a government program, the government’s decisions as to what equipment to use and how to use that equipment fall under the discretionary-function exception, absent governing standards or directives. See Totten, 806 F.2d at 701 (holding that decisions regarding the kinds of equipment used and the manner in which fuel was removed following a missile-test failure were shielded by the discretionary-function exception); see also Flynn v. United States, 902 F.2d 1524, 1530-31 (10th Cir.1990) (holding that the discretionary-function exception barred claims against National Park Service employees for negligent operation of emergency lights on emergency vehicles because there were “no fixed standards for training or use of emergency vehicles”).
Further, Kohl’s contention that the conduct falls outside the exception because it involved “machine operator error” is of no avail. Appellant Reply Br. at 5. The Supreme Court’s discretionary-function-exception cases have made clear that the fact that the decisionmaking involved occurred on an operational level does not affect the analysis. See Gaubert, 499 U.S. at 325, 111 S.Ct. 1267; Varig Airlines, 467 U.S. at 820, 104 S.Ct. 2755. The discretionary-function exception protects both high-level policymakers and the employees who implement broader governmental objectives. In Varig Airlines, the Court held that the discretionary-function exception shielded not only the federal government’s broad decision to implement a “spot-check” system for ensuring compliance of airplanes with FAA regulations, but also “the acts of FAA employees in executing” the program. Varig Airlines, 467 U.S. at 820, 104 S.Ct. 2755. Similarly, in Gaubert, the plaintiffs argued that some of the government’s actions fell outside the discretionary-function exception because “they involved the mere application of technical skills and business expertise” to the supervision of a savings-and-loan association. Gaubert, 499 U.S. at 331, 111 S.Ct. 1267. The Court rejected this proposition, holding that operational, day-to-day decisions can fall within the discretionary-function exception.[4] Id. at 331-32, 111 *945 S.Ct. 1267. These cases make clear that the discretionary-function exception protects decisions at the operational level, including choices like the one ATF employee Guerrero made in this case about when to use a winch. Because ATF employees had discretion to decide how best to conduct the field test, including which equipment to use, the decision to use a specific piece of equipment in this particular situation, i.e., to use a winch to open the door of the minivan, also falls within the government’s discretionary decisions. This is so even if Guerrero was negligent in using the equipment — the discretionary-function exception protects even abuses of discretion. 28 U.S.C. § 2680(a) (stating that the FTCA does not apply to claims based on discretionary functions, “whether or not the discretion involved [was] abused”). Kohl’s claims against the United States for negligence during the research experiment are thus barred by the discretionary-function exception.
III. CONCLUSION
For the foregoing reasons, we AFFIRM the judgment of the district court dismissing Kohl’s claims for lack of subject-matter jurisdiction.

. Although there is some confusion over whether Defendant United States is making a facial or factual attack on jurisdiction under Rule 12(b)(1), see Kohl, 2011 WL 4537969, at *3, "[a]s the district court made essentially no factual findings in deciding it ... lacked jurisdiction, we will treat this as a 'facial' 12(b)(1) motion.” DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir.2004). In a facial attack on jurisdiction, all allegations of the plaintiff must be accepted as true. See Abbott v. Michigan, 474 F.3d 324, 328 (6th Cir.2007).

. Kohl appears to argue in her brief that because there was no formal or written policy addressing the conduct at issue, the discretionary-function exception cannot apply. See Appellant Br. at 23-26. This argument makes little sense. The governing precedents do not imply that government conduct can be discretionary only if it is taken pursuant to a written directive of some sort. Rather, the existence of such a formal statute, regulation, or policy prescribing a course of action means that the discretionary-function exception will not apply. See Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954. Indeed, it is more likely that government agents are exercising discretion if they are conducting an experiment that is not governed by a written manual or regulation, because such decisions will involve "an element of judgment or choice.” Id.

. In Bultema, we stated that an action which is not a "necessary concomitant” of a broader discretionary policy would not fall within the discretionary-function exception. Bultema, 359 F.3d at 383. At oral argument, Kohl relied on this statement and argued that because the use of the winch was not a necessary concomitant of the broader discretionary decisions about how to run the experiment, any negligence in using the winch would not be shielded from liability. As explained above, we do not agree that the decision to use the winch was tangential. Given that a main part of the experiment involved recovering evidence from the explosives range for later laboratory analysis, decisions about what equipment to use to extract the evidence were a necessary part of the decisions involved in how to execute the experiment.

. The dissent, citing the Supreme Court’s decision in Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), concludes instead that "once the gov *945 ernment makes a protected policy, every implementing step like conducting an experiment or repairing damaged equipment must proceed with 'due care' in carrying out its decision.” See Dissent Opn. at 946. First, we note that the discretionary-function exception was not at issue in Indian Towing, because the government in that case conceded it was not applicable. See 350 U.S. at 64, 76 S.Ct. 122. This appears to have been because the allegedly negligent acts occurred at the operational level, which, under early Supreme Court precedent, were not within the scope of the discretionary-function exception. See Harrell v. United States, 443 F.3d 1231, 1237 (10th Cir.2006). Thus, the Court’s statements about the government’s duty to maintain the lighthouse related to "hornbook tort law,” not discretionary-function-exception analysis. See 350 U.S. at 64, 76 S.Ct. 122. Even if we read the government's concession in Indian Towing as an indication that the conduct at issue did not involve discretion, but rather only a "ministerial” act, we do not think that the case’s holding that the government may be sued for negligence involving the ministerial act of "maintaining a physical object in good working order” necessitates a different result than we reach here. See Alfrey v. United States, 276 F.3d 557, 567 (9th Cir.2002). Second, several courts of appeals have explained that Indian Towing, decided in 1955, is "simply not persuasive authority in the context of the discretionary function exception” given subsequent Supreme Court decisions. Harrell, 443 F.3d at 1237; see, e.g., Thames Shipyard & Repair Co. v. United States, 350 F.3d 247, 255 (1st Cir.2003); Ochran v. United States, 117 F.3d 495, 505 (11th Cir.1997); Baum v. United States, 986 F.2d 716, 723 (4th Cir.1993).
The dissent further relies on Downs v. United States, 522 F.2d 990 (6th Cir.1975), stating that "[t]he relevant question [i]s whether the agents' activities entailed 'the formulation of governmental policy, whatever the rank of those so engaged.’ ” Dissent Opn. at 948 (quoting Downs, 522 F.2d at 997). But the Supreme Court has explained that the discretionary-function exception applies not only to policy formulation, but also to the implementation of such policies, when discretion is involved in such implementation. See Gaubert, 499 U.S. at 325-26, 111 S.Ct. 1267; Varig Airlines, 467 U.S. at 820, 104 S.Ct. 2755. Regardless of the wisdom of the dissent's focus on redistributing the cost of accidents, its analysis is not in accord with current precedents regarding the discretionary-function exception.