NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0313n.06

No. 14-3705

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, EX REL. TERRY JACOBS, | ) ) ) | **FILED** <br> May 01, 2015 <br> DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| LAMBDA RESEARCH, INC., ET AL., | ) ) | |
| Defendants-Appellees. | ) | |

Before: KETHLEDGE and WHITE, Circuit Judges; LUDINGTON, District Judge.[*]

KETHLEDGE, Circuit Judge. In October 2009, an Ohio state-court jury found that Terry Jacobs had stolen trade secrets from his former employer, Lambda Research. The Ohio court ordered him to pay Lambda $9.4 million in damages and attorney's fees. Two months later, Jacobs sued Lambda in federal court under the False Claims Act, alleging that Lambda had defrauded the Navy. Given the timing of the two suits, the district court was concerned that Jacobs had filed his suit in retaliation for Lambda's. The court repeatedly cautioned Jacobs and his lawyer that, if they proceeded to the end of discovery without evidence to back up Jacobs's claim, the court would sanction them for filing a frivolous lawsuit. Jacobs persisted in the suit. After discovery, the court granted summary judgment to Lambda and imposed sanctions on Jacobs and his lawyer. We affirm and order counsel to show cause why he should not be sanctioned for filing a frivolous appeal.

_____

[*] The Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, sitting by designation.

I.

A.

Lambda is a small business in Cincinnati that develops technological processes to strengthen metal components. One of its processes, called low-plasticity burnishing, strengthens aircraft parts by inducing "residual compressive stress," a feature that makes the metal more resistant to fatigue. "[T]he process involves passing a computer-controlled tool containing a spherical roller ball suspended in viscous fluid over the surface of the metal and exerting pressure [on the metal], thereby creating compression deep in the metal and making the material stronger." R. 75 at 2.

During the burnishing process, pressure from the roller ball deforms the surface of the metal. The process of deforming the metal in this way is called "cold work." (The opposite of cold work is "hot work": the process of deforming a piece of metal at high temperatures, *e.g.*, forging a hot piece of metal by striking it with a blacksmith's hammer.) Like the deformation process itself, the resulting deformities are also called "cold work." If a part has too many deformities—that is, too much cold work—then the part is more likely to break when used at extremely high temperatures. If the part is designed for use at lower temperatures, however, then the amount of cold work does not matter much. Lambda's patents assert that its burnishing process produces cold-work levels of "about" five percent.

Lambda's competitors also offer technologies that strengthen metal parts. According to Lambda, low-plasticity burnishing is better for three reasons: it produces less cold work; it produces more residual stress (which makes the metal stronger); and it produces more-precise levels of residual stress.

B.

The United States Navy uses a fighter known as the Harrier Jump Jet. Harriers operate like the Navy's other warplanes during flight, but they can take off and land vertically—much like a helicopter—allowing them to operate from smaller ships and runways. In the 1990s, several Harriers crashed after a metal vane in their engines failed. The Navy thus began looking for a technology that could strengthen the vanes and prevent future crashes. In 2000, the Navy began exploring whether Lambda's process would work.

For the next seven years, Lambda and the Navy jointly researched and tested the process. The Navy's lead compression-systems engineer, Ravi Ravindranath, was Lambda's primary point of contact. Ravindranath was intimately involved in the research and testing process; indeed, he and Lambda co-authored several scientific papers on low-plasticity burnishing.

In 2007, the Navy hired Lambda to use its process to strengthen vanes for the Harrier fleet. Lambda's contracts with the Navy stated that the burnishing process would "minimiz[e]" cold-work levels, but did not specify the precise cold-work levels that the process would produce. Even so, the Navy knew that the process often produced cold-work levels above five percent: Ravindranath had co-authored papers showing that the process sometimes produced cold-work levels much higher than that—between 20 and 30 percent. But since the vanes were designed for use in the front of the engines rather than the rear—and thus did not need to operate at extremely high temperatures—the Navy was not concerned about the exact cold-work levels. R. 52-4 at 647. In the seven years since the Navy started using Lambda-burnished parts, no Harriers have crashed as a result of faulty vanes. R. 52-8 at 703.

C.

Terry Jacobs worked at Lambda from 2000 to 2002, first as a senior engineer, later as vice-president. Jacobs left Lambda to become vice-president of Ecoroll Corporation, a German competitor. While at Ecoroll, Jacobs repeatedly emailed Ravindranath to tell him that Lambda's process produced cold-work levels above five percent, and that the Navy should thus hire Ecoroll to do the vane work instead. R. 52-8 at 705. Ravindranath replied that his office did not entertain direct solicitations. Jacobs later attempted to invalidate Lambda's patent by informing the Patent Office that Lambda's process produced higher cold-work levels than Lambda's patent suggested. R. 63-6. The Office rejected Jacobs's request and confirmed Lambda's patent.

Around the same time, Lambda sued Jacobs in Ohio state court, alleging that he had breached his confidentiality agreement, stolen Lambda's trade secrets, and given them to Ecoroll. A jury found Jacobs liable and awarded Lambda $8 million in damages. The judge found that Jacobs had misappropriated Lambda's trade secrets willfully, and thus awarded Lambda an additional $1.4 million in attorney's fees.

Two months later, Jacobs filed this lawsuit against Lambda under the False Claims Act. 31 U.S.C. § 3730. In support, Jacobs alleged that Lambda had induced the Navy to use Lambda's burnishing process by falsely telling the Navy that the process always produced cold-work levels of less than five percent. Jacobs filed his complaint under seal, as required by law, but later told his associates at Ecoroll about the complaint. R. 63-1 at 1476-79. Indeed, Jacobs believes that he was terminated by Ecoroll because he filed this suit.

In August 2011, Lambda filed a motion to dismiss. The court held a hearing on that motion, during which it warned Jacobs and his attorney, James DeRoche, that "if you are using this [lawsuit] to vent some spleen against these folks, you're going to end up getting sanctioned."

R. 52-2 at 17-18. DeRoche assured the court that the lawsuit was legitimate. The court reiterated its warning:

> Now, I want to caution you again. If this is a frivolous suit, as has been implied, you're subject to be sanctioned. Rule 11 is there and it's there for a reason[.] . . . If it turns out that [this case] is frivolous or as soon as you discover that it is frivolous or without merit . . . you should dismiss it.

*Id.* at 21. DeRoche assured the court that he understood. The court ultimately denied Lambda's motion to dismiss, but repeated its warning for a third time in its order:

> As the Court cautioned[,] should it become apparent that the claims herein are without evidentiary support or are being pursued for an improper purpose, [Jacobs] is under a duty to dismiss them voluntarily.

R. 24 at 1-2.

The parties proceeded to discovery. After Jacobs failed to depose any Navy employees—in support of his claim that Lambda had defrauded the Navy—Lambda sent DeRoche a letter to remind him of the court's warnings. R. 52-12. Lambda also warned DeRoche that, if he failed to dismiss the suit voluntarily, Lambda would seek sanctions from him directly. (Jacobs himself was judgment-proof due to the outstanding $9.4-million state-court judgment.) *Id.*

Instead of dismissing the suit, DeRoche filed a motion asking the court to allow Jacobs to inspect (and photograph) Lambda's equipment and processes. R. 48. The court was understandably concerned about allowing Jacobs—a "known thief," who had stolen Lambda's trade secrets in the past—to access Lambda's facility, where he might steal more. R. 51 at 7-8. Hence the court denied Jacobs motion. *Id.*

Lambda then moved for summary judgment, arguing that Jacobs had violated the mandatory-seal provisions of the False Claims Act and that, in any event, his claims were meritless. The court held as an initial matter that Jacobs had indeed violated the seal requirements when he discussed the complaint with Ecoroll's employees and lawyers. That

violation alone, the court held, entitled Lambda to summary judgment. R. 75 at 18. The court

also addressed the merits, holding that Jacobs failed to show a genuine issue of material fact as to

any of the three elements of an FCA claim. *Id.* at 18-30.

Lambda also moved for sanctions against Jacobs and his attorney under 28 U.S.C.

§ 1927, 31 U.S.C. § 3730(d)(4) (which is a provision of the False Claims Act itself), and Rule 11

of the Federal Rules of Civil Procedure. The court granted that motion, stating that

> [t]here is abundant evidence that the claims alleged in this case are frivolous and
> that Jacobs brought this action . . . as retaliation for Lambda's successful state
> court action [and/or] as an attempt to obtain Lambda's sensitive business
> information.

R. 75 at 31. Thus, the court ordered Jacobs and DeRoche to pay Lambda's attorney's fees. This

appeal followed.

## II.

### A.

We review the district court's grant of summary judgment de novo. *Bultema v. United

States*, 359 F.3d 379, 382 (6th Cir. 2004). To prevail on a claim under the FCA, a plaintiff must

show that the defendant made a false statement to the government, that the defendant did so

intentionally, and that the statement was material to the government's decision to pay the

defendant for work performed on the government's behalf. *United States ex rel. A+ Homecare,

Inc. v. Medshares Mgm't Grp., Inc.*, 400 F.3d 428, 444-45, 451 (6th Cir. 2005).

Here, the district court held that no reasonable jury could find that Lambda made a false

statement to the Navy, much less an intentional one. We agree. Jacobs presented no evidence

that Lambda ever told the Navy that the burnishing process would always produce cold-work

levels of less than five percent. To the contrary, the record showed that Lambda repeatedly

disclosed to the Navy the exact cold-work levels that Lambda's process produced, rendering

"absurd" any allegation that Lambda was intentionally trying to "dup[e]" the Navy. *United States ex. rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1019-20 (7th Cir. 1999). The district court likewise held that no reasonable jury could find that Lambda's statements about cold-work levels were material to the government's decision to hire Lambda. We agree, because three Navy witnesses submitted declarations, which Jacobs did not contradict, stating that the Navy simply did not care about the precise cold-work levels that Lambda's process would produce. Rather, the Navy's "overwhelming concern with [Lambda's process] was the demonstrated fatigue benefit," a characteristic wholly unrelated to the resulting cold-work levels. R. 52-8 at 701. Finally, all of the Navy witnesses agreed that the Navy's arrangement with Lambda met or exceeded expectations, and that the Navy continued its contractual relationship with Lambda after Jacobs's allegations were made public. For all of these reasons, the district court correctly granted summary judgment to Lambda.

B.

Under 28 U.S.C. § 1927 and Rule 38 of the Federal Rules of Appellate Procedure, we can impose sanctions on an attorney if he files a frivolous appeal. An appeal is frivolous if "it is obviously without merit and is prosecuted for delay, harassment, or other improper purposes." *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1212 (6th Cir. 1997) (emphasis and interior quotations omitted). As the district court concluded as to the litigation below, we are inclined to conclude that this appeal is both baseless and brought primarily for purposes of harassment, and that Jacobs's attorney, Patrick Perotti, should be sanctioned as a result. We therefore order Perotti to show cause within 14 days why he should not be sanctioned. Lambda will then have 14 days to file a response.

\*  \*  \*

The decision of the district court is affirmed.