RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0184p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

PAUL W. ABBOTT, et al. (22-5492); MICHAEL B. REED, individually, as surviving spouse and next of kin of Constance M. Reed, deceased, and as surviving parent of Chloe E. Reed and Lillian D. Reed, deceased, et al. (22-5493); BRITTANY N. HYRE ANCULLE, et al. (22-5494); JACKIE SUE BARNES, et al. (22-5495); BRITTANY ADKINS, et al. (22-5499); JAMES CARL VANCE, individually, and as surviving spouse and next of kin of May Evelyn Norred Vance, deceased (22-5513),

> Nos. 22-5492 /5493 /5494 /5495/ 5499 /5513

       *Plaintiffs-Appellants*,

  *v.*

UNITED STATES OF AMERICA,

       *Defendant-Appellee*.

─────────────────

Appeal from the United States District Court for the Eastern District of Tennessee at Knoxville.
Nos. 18-cv-201; 18-cv-308; 18-cv-310; 20-cv-149; 20-cv-283—J. Ronnie Greer, District Judge.

Argued: January 25, 2023

Decided and Filed: August 17, 2023

Before: CLAY, WHITE, and THAPAR, Circuit Judges.

─────────────────

### COUNSEL

**ARGUED:** Benjamin C. Glassman, SQUIRE PATTON BOGGS (US) LLP, Cincinnati, Ohio, for Appellants. Jeffrey E. Sandberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Gordon Ball, GORDON BALL LLC, Nashville, Tennessee, Diana L. Martin, COHEN MILSTEIN SELLERS & TOLL PLLC, Palm Beach Gardens, Florida, for Appellants. Jeffrey E. Sandberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

  WHITE, J., delivered the opinion of the court. CLAY, J. (pp. 21–30), delivered a separate concurring opinion. THAPAR, J. (pp 31–32), delivered a separate concurring opinion.

---

**OPINION**

---

HELENE N. WHITE, Circuit Judge.  Plaintiffs‑Appellants appeal the dismissal of their claims under the Federal Torts Claims Act (FTCA) for damages caused by the National Park Service's failure to warn of an uncontrolled wildfire ("Fire") that escaped from Great Smoky Mountains National Park (the "Park").  They appeal the denial of their motion to alter or amend the judgment under Federal Rule of Civil Procedure 59 as well.  We vacate and remand.

**I.**

**A.**

On November 23, 2016, a slow-moving fire covering less than an acre was discovered by the Fire Management Officer of the Park, Greg Salansky.  Due to the upcoming Thanksgiving holiday, the Park's superintendent and most of the staff were away, and Salansky undertook to manage nearly every aspect of the Park's fire response, from monitoring the Fire to organizing firefighting efforts and emergency notifications.

On the morning of November 24, Salansky and four other National Park Service ("NPS") firefighters returned to the scene.  Salansky observed that the Fire had not spread since the night before but determined that building a fire line would be impossible in any event due to the steep terrain.[1]  Accordingly, "Salansky opted to let the [F]ire burn," using the natural terrain to "contain the Fire." *Reed*, 22-5493, R.1, PID at 54.

Over the next four days, the Fire continued to grow despite the efforts of Park employees. On Sunday, November 27, Salansky requested additional "ground and aerial" firefighting resources from the NPS, the National Guard and the Bureau of Indian Affairs.  *Id*. at 67.

---

[1]A "fire line" is constructed by creating a gap in vegetation to slow the advance of a fire.  Salansky opted to use an "indirect attack 'box' suppression strategy," which makes use of "natural and pre-existing features such as trails, drainage bottoms, and natural features" to cut a wildfire off from fuel and slow its advance.  *Reed*, 22-5493, R.1-5, PID 166.

By around 1:00 pm, a National Guard "Chinook Type 1 helicopter – the largest helicopter for use on wildfires" arrived to begin pulling water from the Pigeon River and dropping it onto the Fire. *Id.* at 68-69.  By that evening, the Fire had spread to between 35 and 40 acres but was still within the boundaries of the Park.  Salansky released all firefighting personnel for the evening so that they could return the following day at first light.  He did not monitor the Fire overnight.

The wind grew in strength, and at 4:05 a.m. Monday, November 28, the National Weather Service ("NWS") issued a high-wind warning, predicting "'sustained wind speeds of at least 40 mph' by 1:00 p.m., with gusts of up to 60 mph." *Id*. at 75 (emphasis omitted).  By 7:30 a.m., Salansky estimated that the Fire had grown from 40 acres to between 250 and 500 acres. When the firefighters returned that morning, they discovered that burning embers from the main fire had created "smaller fires as far as a mile away from the origin of the [F]ire." *Id.*  Around the same time, people in Gatlinburg observed heavy smoke and ash falling from the sky.  According to Plaintiffs, even at this point, "neither [acting Park Superintendent Clayton] Jordan[2] nor Salansky (nor any other Park official) took the slightest action to notify or warn Park neighbors, local officials, local residents or visitors of the imminent danger." *Id*. at 77.  By 9:00 a.m., the Gatlinburg Fire Department began receiving emergency calls from members of the public about the smoke and falling ash.  The Gatlinburg Fire Chief attempted to reach Salansky, but his call went unreturned until 10:58 a.m. The 10:58 a.m. call was the first communication between any Park staff and any Gatlinburg or other local official about the Fire.

Around noon, Gatlinburg Fire Department first-responders began delivering voluntary evacuation notices to residents in the Mynatt Park neighborhood of Gatlinburg.  By 2:00 p.m., the Fire was moving as fast as half a mile per hour.  By 4:15 p.m., the Fire was within a mile of the Mynatt Park neighborhood. *Id.* at 90.  After 5:00 p.m., the Fire covered about 4,000 acres and had doubled in size since 3:00 p.m.  Park Headquarters was evacuated around 5:15 p.m. Around 5:45 p.m., the Gatlinburg Fire Department received reports of fires within the city. At 6:00 p.m., winds gusted to 87 miles per hour and the Fire grew to 5,000 acres.  A mandatory

---

[2]Because of the Thanksgiving holiday, Park Superintendent Cassius Cash and many other Park employees were on scheduled vacation from November 23 through November 27.  During that timeframe, Deputy Park Superintendent Jordan was acting Park Superintendent.

evacuation of the Mynatt Park neighborhood was issued at 6:11 p.m.   Other fires ignited throughout the night.   Plaintiffs assert that as the Fire continued to spread, "[e]vacuation-protocols also broke down" because local officials "simply lacked reasonable or sufficient time to reach every house, every apartment, every trailer, every campground, every cabin, or every hotel room ahead of the [F]ire."   *Reed*, 22-5493, R.1, PID 97.   A total evacuation of the Gatlinburg area was ordered shortly after 8:30 p.m.   However, due to infrastructure failures created by the Fire—including the destruction of two Verizon cell towers—NWS did not send a message through the Emergency Alert System instructing residents to evacuate until 9:03 p.m. that night.

Rain finally arrived at 2:00 a.m. on November 29 and began to slow the Fire's spread. By that point, however, significant damage had been sustained by the Park and its neighbors.  All told, 14 people died, 191 were injured, 2,500 structures were damaged or destroyed, and more than 17,000 acres burned.  The Fire was not fully extinguished until December 13, 2016.

**B.**

In the aftermath of the Fire, both the NPS and ABSG Consulting conducted independent reviews of the conduct of Park staff in responding to the Fire.   The ABSG Report was commissioned by the City of Gatlinburg and Sevier County.  Although the NPS Report identified "no evidence of wanton disregard or negligence by anyone at the park," it determined that Park staff had failed to give proper warnings, and that the Fire "exposed several wildlife fire situational preparedness and planning weaknesses" at the Park.  *Reed*, 22-5493, R.1-5, PID 223, 227.   The report's scope, however, was limited to "NPS's preparedness and response to the Chimney Tops 2 Fire as it originated and burned within the Park's boundaries up to the time the [F]ire left the Park"—accordingly, it "did not detail anything that happened after" the Fire "spread outside the Park."  *Reed*, 22-5493, R.1, PID 110.  The ABSG report was more critical, stressing that "[f]rom the initiation of the Chimney Tops 2 wildfires on November 23 until the morning of November 28, there was no communication to the [Gatlinburg Fire Department] regarding the existence or progression of the" fire.  *Reed*, 22-5493, R.1-6, PID 309.  Along with various other problems, the ABSG report highlighted that Park "personnel contacted [Gatlinburg

Fire Department] only after [the Gatlinburg Fire Department] had initiated inquiries regarding the" Fire. *Id*. at 330.

Plaintiffs all suffered the loss of loved ones or property.**[3]**

**C.**

In the months following the Fire, hundreds of individuals and several small businesses submitted claims for damages with the Department of the Interior using the Standard Form 95 ("SF95"), which is available on the Department of Justice website. Although the forms submitted by Plaintiffs differ as to their claimed injuries, the SF95 submissions are substantially similar in content. The SF95s state:

> The U.S. government, through its employees, failed to follow mandatory regulations to monitor and extinguish a fire in the Great Smoky Mountains National Park, thereby allowing it to spread beyond the park boundaries onto claimants' private property, destroying their property.

*Abbott*, 22-5492, R.1-2, PID 192.

After the Department of the Interior failed to act on these claims within sixth months, Plaintiffs filed these actions. Plaintiffs' complaints seek relief based on the Park's failure to monitor and extinguish the Fire—as stated in the SF95 forms—and also based on the Park's failure to warn Park neighbors of the Fire.

Plaintiffs comprise six classes: the *Abbott* Plaintiffs, the *Reed* Plaintiffs, the *Anculle* Plaintiffs, the *Barnes* Plaintiffs, the *Adkins* Plaintiffs and the *Vance* Plaintiffs. The *Reed* Plaintiffs were the first to file their SF-95s with the Department of Interior, doing so in January and February of 2017. They filed suit over a year later in May 2018. The other plaintiffs' notices of claims and subsequent complaints were filed in similar fashion. *Anculle*, 22-5494, R.1-1 (SF-95 claims filed beginning in August 2017); *Anculle*, 22-5494, R.1 (complaint filed in

---

**[3]**Named Plaintiff Michael Reed suffered the loss of his wife and two daughters and his home. Named Plaintiff James Vance lost his wife and his home in Gatlinburg. Named Plaintiff Brittany Anculle suffered the loss of property that was stored in Gatlinburg. Named Plaintiff Jackie Barnes lost her home in Sevierville. Named Plaintiff Brittany Adkins lost her home in Gatlinburg. And Named Plaintiffs Paul and Toni Abbott lost their home in Gatlinburg and a camper van.

July 2018); *Barnes*, 22-5495, R.1-1 (SF-95 claims filed beginning in May 2018); *Barnes*, 22-5495, R.1 (complaint filed in August 2019); *Adkins*, 22-5499, R.1-1, PID197 (SF-95 claims filed beginning in October 2017); *Adkins*, 22-5499, R.1 (complaint filed in July 2018); *Vance*, 22-5513, R.1-1 (SF-95 claims filed beginning in May 2018); *Vance*, 22-5513, R.1 (complaint filed in July 2019); *Abbott*, 22-5492, R.1-4, PID 193 (SF-95 filed beginning November 2018); *Abbott*, 22-5492, R.1 (complaint filed in April 2020). The *Reed* Plaintiffs' complaint alleged five causes of action: 1) negligence – failure to monitor; 2) negligence – failure to comply with command structure requirements; 3) negligence – failure to adhere to mandatory fire management policies and requirements; 4) negligence – failure to warn; and 5) wrongful death under Tenn. Code Ann § 20-5-106. Plaintiffs alleged that "[a] lack of early notice from the Park appeared to be the most critical failure of all, according to the ABS[G] Report" and that "[b]y the time local officials [were] informed about the true danger, [t]he Chimney Tops 2 Fire was unstoppable." *Reed*, 22-5493, R.1, PID 112. The other Plaintiffs also filed complaints asserting similar causes of action.

## D.

In October 2018, the government moved to dismiss the claims of the *Reed*, *Anculle*, and *Adkins* Plaintiffs for lack of subject-matter jurisdiction,[4] arguing that Plaintiffs' claims fall within the discretionary-function exception to the government's waiver of sovereign immunity under the FTCA. *See* 28 U.S.C. § 2680(a). The district court issued a memorandum and order denying the government's motion. In the same order, the district court also found that Plaintiffs had abandoned all claims except the failure-to-warn claims.

The district court reasoned that application of the discretionary-function exception turns on a test set out in *United States v. Gaubert*, 499 U.S. 315 (1991). Under that test, the government is immunized from liability under the discretionary-function exception if 1) the challenged action "involv[es] an element of judgment or choice" and 2) if the judgment involved "is of the kind that the discretionary function exception was designed to shield," i.e., "governmental actions and decisions based on considerations of public policy." *Id.* at 322-23

---

[4]The *Vance*, *Abbott*, and *Barnes* Plaintiffs did not file their complaints until after the government's first motion to dismiss.

(quoting *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)).  Then, the district court found that the discretionary-function exception did not apply because sections of the Fire Management Plan (FMP) contained mandatory directives.  Specifically, the district court determined that the instruction at Section 3.3.2(C) of the FMP, which states that "Park neighbors, Park visitors and local residents will be notified of all planned and unplanned fire management activities that have the potential to impact them" requires the NPS to take specific action and therefore contains a mandatory directive.  *Reed*, 22-5493, R.1-7, PID 471.  Similarly, the court also held that Table 13 of the FMP, which lays out "mitigations for public safety issues," including the requirement to "post current fire information on websites as available," "inform park neighbors of wildland fires," and "use information officer and/or park public affairs to disseminate information" sets forth mandatory directives.  *Reed*, 22-5493, R.1-7, PID 498.  Because the district court found that the first prong of the *Gaubert* test was not satisfied, it did not discuss the second prong of the test.

The government moved again to dismiss Plaintiffs' claims on February 7, 2020.[5]  In this motion, the government sought dismissal on a factual challenge under the discretionary-function exemption, essentially arguing that even accepting that the requirements of the FMP were mandatory directives, the Park complied with those requirements.  Although the government presented evidence that the Park had presented current fire information on its website and had issued press releases about the Fire—as required by Table 13 of the FMP—the district court rejected the argument that NPS had notified Park neighbors, Park visitors and local residents "of all planned and unplanned fire management activities that have the potential to impact them." And the district court found that the NPS had not presented sufficient evidence that it had "[i]nform[ed] Park neighbors of wildland fires" as required by Table 13.  The district court denied the motion.

On June 1, 2021, the government filed its third and fourth motions to dismiss for lack of subject-matter jurisdiction.  The third motion argued that Plaintiffs' claims were barred by the

---

[5]By this point, all five classes of plaintiffs had filed suit, and the government moved to dismiss all five suits in its renewed motion to dismiss.

FTCA's misrepresentation exception. *See* 28 U.S.C. § 2680(h).[6] The district court denied this motion, finding that Plaintiffs' claims arise out of negligence, not misrepresentation, and that the misrepresentation exception primarily applies to claims of commercial or pecuniary injuries.

The fourth motion argued that Plaintiffs had failed to properly present their failure-to-warn claims to the Department of the Interior in their SF95s. Plaintiffs argued that the SF95s had sufficiently presented failure-to-warn claims, that the FTCA's presentment requirement is not jurisdictional, and that the district court could find the government had waived the argument or was estopped from raising it. Although the district court explained that there is a "strong argument that this requirement should no longer be applied as jurisdictional" based on the Supreme Court's decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), and our recent decision in *Copen v. United States*, 3 F.4th 875 (6th Cir. 2021), it found itself bound by *Garrett v. United States*, 640 F.2d 24 (6th Cir. 1981). *Reed*, 22-5493, R.160, PID 5878. In *Garrett*—which predates the Supreme Court's re-examination of jurisdictional requirements in *Arbaugh*—the Sixth Circuit squarely held that the presentment requirement of the FTCA is a "jurisdictional requirement[], not capable of waiver or subject to estoppel." *Garrett*, 640 F.2d at 26.[7] The district court granted the motion and dismissed Plaintiffs' cases without prejudice, finding that "[t]he Individual Plaintiffs' SF-95s contain no information about a failure to warn or facts related to a failure-to-warn claim," and thus the SF95s set out a "claim based on NPS's failure to extinguish the [F]ire rather than a failure-to-warn claim." *Reed*, 22-5493, R.160, PID 5874.

Plaintiffs filed a motion to alter or amend the judgment under Rule 59(e). Plaintiffs argued that "not only did the Government have actual notice of Plaintiffs' failure to warn claims" but it also "advised Plaintiffs' counsel during a meet and confer and in writing that their initial SF-95 forms were sufficient and that it was not aware of any defects to the notice provided." *Reed*, 22-5493, R.163, PID 5968. And "[h]aving received reassurance from the United States,

---

[6]The government brought the third motion to dismiss against all five plaintiff classes, as well as six classes of insurance plaintiffs.

[7]*Garrett*'s holding—that 28 U.S.C. § 2675(a) is jurisdictional—may not have survived *Arbaugh v. Y&H Corporation*, 546 U.S. 500 (2006). *See Copen v. United States*, 3 F.4th 875, 880–82 (6th Cir. 2021) (concluding that Section 2675(a)'s sister provision, Section 2675(b), is not jurisdictional). However, since we hold that petitioners satisfied Section 2675(a), we do not need to decide this issue.

Plaintiffs relied on the Government's representations to their detriment by using substantially similar SF-95 forms to provide notice for additional individual Plaintiffs and by refraining from amending any of the SF-95 forms." *Id.* Thus, Plaintiffs argued, the district court had erred in dismissing the claims for failure to file adequate SF95 forms. The district court denied Plaintiff's Rule 59 motion, explaining that the "requirements for subject matter jurisdiction are 'not capable of waiver or subject to estoppel.'" *Reed*, 22-5493, R.168, PID 6153 (quoting *Garrett*, 640 F.2d at 26).

Plaintiffs timely appealed. We VACATE the dismissal and REMAND for further proceedings.

## II.

A district court's dismissal for lack of subject matter jurisdiction is reviewed de novo, accepting as true any factual findings of the district court unless they are clearly erroneous. *Hohman v. Eadie*, 894 F.3d 776, 781 (6th Cir. 2018).

## III.

Plaintiffs make two arguments on appeal: first, that the district court erred by finding that Plaintiffs' SF95 forms did not satisfy the FTCA's presentment requirement; and second, that even if the SF95 forms were insufficient, the requirement is not jurisdictional and is subject to waiver or estoppel. Because we find that the SF95s adequately presented Plaintiffs' failure-to-warn claims under the circumstances of this case, we do not reach the jurisdictional issue.

Before filing suit under the FTCA, a claimant must first "present" that claim to the relevant agency. Specifically, under Section 2675(a) of the FTCA:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make  final disposition of a claim

within six months after it is filed shall . . . be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). The presentment requirement is not a particularly high bar; "Section 2675(a) requires only 'minimal notice.'" *Knapp v. United States*, 844 F.2d 376, 379 (6th Cir. 1988) (quoting *Warren v. United States Dep't of the Interior*, 724 F.2d 776, 779 (9th Cir. 1984)). All the section requires is that the claimant "1) give written notice of a claim sufficient to enable the agency to investigate the claim and 2) place a value (or 'sum certain') on the claim." *Glarner v. United States*, 30 F.3d 697, 700 (6th Cir. 1994). "A claim submitted to the proper administrative agency is considered sufficient to satisfy the exhaustion requirement if it is a 'written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death.'" *Blakely v. United States*, 276 F.3d 853, 864 (6th Cir. 2002) (quoting *Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1991) (per curiam)).

Our sister circuits' decisions are consistent with this Court's precedent that an administrative claim need not articulate a precise cause of action in order to satisfy the presentment requirement. *See Khan v. United States*, 808 F.3d 1169, 1172 (7th Cir. 2015) ("All that must be specified, therefore, is 'facts plus a demand for money;' if those two things are specified, 'the claim encompasses any cause of action fairly implicit in the facts." (quoting *Murrey v. United States*, 73 F.3d 1448, 1452 (7th Cir. 1996))); *Goodman v. United States*, 298 F.3d 1048, 1056 (9th Cir. 2002) (noting that the plaintiff "was not required to provide [the agency] with a preview of the details of his federal complaint, nor required to describe in more than minimal detail the factual predicate for his claim."); *Broudy v. United States*, 722 F.2d 566, 568-69 (9th Cir. 1983) ("We see nothing in section 2675(a) or the regulations which require the claimant to state with great specificity the legal theories to be asserted in the eventual FTCA action.").

The text of the statute confirms this interpretation. Section 2675(a) does not require that a particular theory of liability be presented to the agency; instead, it requires only that the "the claim" be submitted "to the appropriate Federal agency." *See Nagrampa v. MailCorps, Inc.*, 469 F.3d 1257, 1264, n.2 (9th Cir. 2006) (en banc) ("Under the federal system, '[t]he word 'claim'

denotes the allegations that give rise to an enforceable right to relief.'" (quoting Moore's Federal Practice § 10.03[2][a] at 10-23 (3d ed. 2006)). Further, the federal regulations interpreting Section 2675(a), require only "written notice of an *incident*, accompanied by a claim for money damages." 28 C.F.R. § 14.2(a) (emphasis added).

In light of this "minimal notice" requirement and the facts presented, the district court erred in finding that Plaintiffs failed to satisfy the presentment requirement. The district court supported its conclusion by explaining that the failure-to-warn claim involved a "different set of operative facts, is based on the acts of a different group of employees, and []relies on different policies and regulations applicable to NPS-firefighting tasks," and thus, notice of failure-to-monitor and failure-to-extinguish claims could not have been sufficient to place the agency on notice of Plaintiffs' failure-to-warn claims. *Reed*, 22-5493, R.160, PID 5877-78. We disagree.

Plaintiffs' complaint and the post-fire investigation report prepared by the NPS detail a course of events in which the Park's purported failures to monitor and extinguish the Fire were interwoven with the Park's communication failures. Many of Plaintiffs' allegations regarding the Park's negligence—whether related to the failure to monitor, extinguish or warn—center on the actions of Fire Management Officer Salansky. Plaintiffs alleged that Salansky took "complete and unfettered command-control of" the Fire. *Reed*, 22-5493, R.1, PID 8. The NPS report explained that Salansky, in violation of official policy, acted as the Fire Management Officer (the person responsible for leading the wildland fire program), the Incident Commander (the person responsible for managing the Fire), and the Duty Officer (the person responsible for ensuring compliance with safety policies and keeping information officers informed of the current and expected situation). And the complaint and the NPS report both explain that the Park was operating with a skeleton staff from November 23 to November 27 (as the Fire was growing in strength and intensity) because Park Superintendent Cash, as well as other Park staff were scheduled to be off work for the Thanksgiving holiday. Although monitoring, firefighting, and warning functions might ordinarily be split among different personnel, here Salansky is alleged to have touched all aspects of NPS's response. Therefore, the failure-to-warn claim did not rest on a "different set of operative facts," nor was it "based on the acts of a different group of

employees," and the district court's contrary conclusion is unsupported by the factual record. *Reed*, 22-5493, R.160, PID 5877.

The district court relied heavily on *Roma v. United States*, 344 F.3d 352 (3d Cir. 2003), which it found "indistinguishable from the situation here." *Reed*, 22-5493, R.160, PID 5877. But beyond not being binding authority, *Roma* is also distinguishable, and the reason why is instructive.

In *Roma*, the Third Circuit ultimately found that Roma had failed to present his claim that the United States had wrongfully caused his injuries by negligently failing to prevent a fire. *Id.* at 363. Roma, a firefighter, suffered smoke-inhalation injuries while fighting a hangar fire at the Naval Air Engineering Station in Lakehurst, New Jersey ("NAES Lakehurst"), *id.* at 354, after a NAES Lakehurst firefighter instructed him to remove his self-contained breathing apparatus ("SCBA") while fighting the fire. *Id.* at 355. Roma filed a SF95 with the Navy, seeking damages for injuries he suffered. Roma described his claim as: "During fire emergency claimant was ordered to remove breathing respirator. As a result of same, claimant sustained significant damage to his respi[ra]tory system." *Id.* at 358. When Roma filed his FTCA complaint in federal court, however, he alleged two torts based on 1) the NAES Lakehurst firefighter's negligent instruction to remove the SCBA, and 2) the negligence of other federal employees in failing to prevent the fire. Roma argued that "his allegation in the initial administrative claim that his injuries were caused by the Hangar No. 1 fire gave the Navy sufficient notice that it also had to investigate potential negligence on the part of federal employees in failing to prevent the fire." *Id.* at 363. The Third Circuit disagreed, finding that "[t]he facts concerning how the fire started and any negligence by federal employees in failing to prevent it are entirely distinct from the conduct involved in supervising the firefighting operations, including the NAES Lakehurst firefighter's instruction to Roma to remove his SCBA." *Id.* Accordingly, Roma's SF95 "did not provide any notice to the United States that it not only had to investigate the way the firefighting was handled by federal employees, but that it also had to engage in a much broader investigation concerning whether the negligence of other, non-firefighter, federal employees may have contributed to the start of the fire itself." *Id.*

*Roma* illustrates the difference between a claim for which there is inadequate notice because it is truly based on a "different set of operative facts, is based on the acts of a different group of employees, and [] relies on different policies and regulations," *Reed*, 22-5493, R.160, PID 5877-78, and, as is the case here, a claim that has a close nexus to those raised in the SF95s. Roma's SF95 detailed a specific instance of negligence—a particular NAES firefighter ordered him to remove his SCBA and he was injured as a result. *Id.* at 358. He then attempted to use presentment of that specific instance of negligence as the basis for a wide-ranging complaint alleging negligence by the Navy in failing to prevent the fire in the first place. *Id.* at 363. The Third Circuit reasonably concluded that such a narrow presentment of negligence could not have given the Navy sufficient notice to investigate claims of negligence by an entirely different set of actors based on actions that preceded the fire. In contrast, Plaintiffs' administrative challenge to the government's "fail[ure] to follow mandatory regulations to monitor and extinguish a fire," *Reed*, 22-5493, R.1-3, PID 153, involves a dispute regarding the government's overall fire management over the duration of the Fire. And here, Plaintiffs allege that every aspect of the government's fire response was interrelated and managed by the same individuals. Thus, unlike in *Roma*, here the employees are the same and the operative facts are, at the very least, overlapping.

The government's own regulations concerning notice also bolster the conclusion that Plaintiffs have satisfied the presentation requirement. This regulation requires only that SF95s contain "written notice of an incident, accompanied by a claim for money damages." 28 C.F.R. § 14.2(a). And here, the SF95s clearly contain "written notice of the incident" that Plaintiffs allege gave rise to their harms—the NPS's alleged failure to deal effectively with the Fire, from the moment it was first spotted until the time it exploded beyond the park five days later. This too supports the Plaintiff's contention that they've met their notice obligations.

In sum, section 2675(a) of the FTCA requires only that a claimant provide written notice "sufficient to enable the agency to investigate the claim and 2) place a value (or 'sum certain') on the claim." *Glarner*, 30 F.3d at 700 (6th Cir. 1994). And this standard requires only "'minimal notice.'" *Knapp*, 844 F.2d at 379 (quoting *Warren*, 724 F.2d at 779). Because a claimant need not articulate the precise cause of action to satisfy the presentment requirement

and the government's monitoring, firefighting, and warning all constituted a single course of action, we conclude that Plaintiffs' SF95 forms sufficiently enabled the Department of the Interior to investigate Plaintiffs' claims of injuries suffered as a result of the failure to warn of the Chimney Tops 2 Fire. Accordingly, we vacate the order of dismissal and find it unnecessary to address whether the presentment requirement is jurisdictional, and if not, whether it was waived.

## IV.

The government urges us to affirm the district court's dismissal on the independent alternative basis that Plaintiffs' claims are barred by the FTCA's discretionary-function exception. The discretionary-function exception is an exception to the FTCA's waiver of sovereign immunity; it "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). The exception excludes from the FTCA's coverage:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The "exception focuses on 'the nature of the conduct, rather than the status of the actor.'" *Mynatt v. United States*, 45 F.4th 889, 895 (6th Cir. 2022) (quoting *S.A. Empresa*, 467 U.S. at 813).

Application of the exception turns on a two-part test. First, we ask "whether the action is a matter of choice for the acting employee." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Second, even if the action is a matter of choice, we also ask whether the relevant choice or exercise of discretion "is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23(citation omitted). As we recently

explained, this test is conjunctive; "the government is entitled to sovereign immunity [under the discretionary-function exception] only if the complained-of actions are *both* discretionary and of the type the exception was designed to protect. If the actions are either non-discretionary or discretionary but unprotected, the government is not entitled to sovereign immunity." *Mynatt*, 45 F.4th at 896.

In its order denying the government's motion to dismiss based on the discretionary-function exception, the district court evaluated only the first prong of this test—whether the complained-of action was "a matter of choice for the acting employee." The district court first explained that "the crucial first step is to determine precisely the conduct at issue," which it identified as "NPS 'neglecting to provide timely and accurate notice and warning to Park neighbors, local government officials, local fire departments, local residents, and visitors about the status of and imminent danger presented by the Chimney Tops 2 Fire.'" *Reed*, 22-5493, R.4, PID 3102 (quoting *Reed*, 22-5493, R.1, PID 139). The district court then determined that Section 3.3.2 of the FMP, which instructs that "Park neighbors, Park visitors and local residents will be notified of all planned and unplanned fire management activities that have the potential to impact them," is a mandatory directive. The district court also determined that Table 13 of the FMP, which includes a list of "Mitigations for Public Safety Issues" such as "Inform[ing] park neighbors of wildland fires," also constitutes a mandatory directive.

The district court distinguished the language in the FMP from the discretionary language involved in *Myers v. United States*, 17 F.3d 890 (6th Cir. 1994). In *Myers*, we determined that a mining regulation, which required that "if, during mandatory quarterly inspections, a safety violation is discovered, then inspectors must issue a citation and, if the violation poses an 'imminent danger,' a withdrawal order," did not set forth mandatory directives. *Id.* at 895 (emphasis omitted). We explained that these instructions could not be mandatory directives because "each of the 'duties' . . . involve[s] an 'if/then' logical structure" which requires

> [the] inspectors [to] first determine that some predicate condition exists. Until
> that assessment is made, the inspector is not bound by statute or regulation to do
> anything other than inspect. This requirement of an antecedent assessment or
> determination presents [the inspector] with a *choice*; does the condition exist or
> doesn't it?

*Id.* at 895-96. The district court found that "unlike the language in *Myers*, neither the language in Section 3.3.2 nor Table 13 contains the 'if/then' language." *Reed*, 22-5493, R.41, PID 3111.

But "if" and "then" are not magic words. Although the district court is correct that neither Section 3.3.2 nor Table 13 contain the words "if" or "then," Section 3.3.2 requires Park staff to make an "antecedent assessment" before carrying out the required task. Section 3.3.2 states that "Park neighbors, Park visitors and local residents will be notified of all planned and unplanned fire management activities *that have the potential to impact them*." *Reed*, 22-5493, R.1-7, PID 471 (emphasis added). Before Park staff are required to inform Park neighbors, Park visitors, and local residents of planned or unplanned fire management activities, the staff must first determine if those activities "have the potential to impact them." Although the regulation does not use the words "if" and "then," the same logical structure is present—if planned or unplanned fire management activities have the potential to impact Park neighbors, Park visitors and local residents, then they must be informed. Like the inspectors in *Myers*, Park staff are faced with a "choice; does the condition exist or doesn't it?" *Myers*, 17 F.3d at 896; *see also Rosebush v. United States*, 119 F.3d 438, 442 (6th Cir. 1997) (finding that an instruction for the Forest Service "to eliminate safety hazards from recreation sites 'to the extent practicable'" required "the exercise of discretion which is protected by the FTCA § 2680(a)." (emphasis omitted)).

The district court erred, therefore, in determining that Section 3.3.2 was not discretionary solely because it does not include the exact "if/then" language that the Court highlighted in *Myers*. *See Reed*, 22-5493, R.41, PID 3111. But the inquiry does not end there. First, the district court must determine whether Park officials ever made the required "antecedent assessment." Section 3.3.2 *requires* Park officials to determine whether the "planned and unplanned fire management activities [] have the potential to impact" "Park neighbors, Park visitors and local residents . . . ." *Reed*, 22-5493, R.1-7, PID 471. If Park officials failed to conduct that assessment, they are not shielded by the discretionary-function exception. *See Myers*, 17 F.3d at 895. Second, if Park officials conducted the "antecedent assessment" and determined that some fire management activities did indeed have the potential to impact Park neighbors, Park visitors, and local residents, then Section 3.3.2 became mandatory. *See id.*

(holding that once officials determine that the relevant "predicate condition exists," the official becomes "bound by statute or regulation . . . ."). Park officials are only shielded by the discretionary-function exception as it relates to Section 3.3.2 if they conducted the required antecedent assessment and determined that the fire management activities did not have the potential to impact Park visitors, Park neighbors, or local residents. *See, id.*

The requirements of Table 13 pose different questions. Table 13 is located in section 4 of the Fire Management Plan, which is titled "Wildland Fire Operational Guidance." *Reed*, 22-5493, R.1-7, PID 472. The Table is found at Section 4.4.2(F), titled "Mitigation," and explains that "[t]his section outline[s] mitigation actions *required* to protect values at risk and to ensure the safety of park staff and visitors as well as the neighboring public." *Id.* at 498 (emphasis added). The relevant portion of the table reads as follows:

| Public Safety Issues | Mitigation |
|---|---|
| Park Neighbors | • Use Smoke Screening Tools<br>• Post current fire information on websites as available<br>• Inform park neighbors of wildland fires<br>• Use information officer and/or park public affairs to disseminate information<br>• Suppress those fires or parts there of that threaten to burn off of park property or that adversely impact public health and safety |

The district court found, and Plaintiffs argue on appeal, that the requirement to "[i]nform park neighbors of wildland fires" constitutes a mandatory directive. The district court explained that "the actions listed in Table 13 are specific as to when and how warnings should occur, namely, Park neighbors should be informed in the event of a wildland fire, using various means, including the internet and information officers." *Reed*, 22-5493, R.41, PID 3112. Plaintiffs

argue that "[u]nder this directive, *all* Park neighbors are to be notified of *all* wildland fires. This specific directive leaves no room for the exercise of agency discretion." Appellants Reply, 30.

The government argues that a requirement that Park officials "inform" "Park neighbors" about wildlands fires does not provide guidance on how to accomplish that objective and therefore leaves Park officials with discretion in its implementation. *See Montez v. United States*, 359 F.3d 392, 396 (6th Cir. 2004) (explaining that a statute that imposed a "mandatory duty" of a "general nature" gave "no guidance" on how to carry out its duties, and therefore, provided officials with discretion). But here the complaint does not concern how the Park provided notice of the Fire, but rather that it failed to provide *any* notice.

In its order addressing the government's second motion to dismiss, which raised a factual challenge to subject matter jurisdiction arguing that the Park had satisfied any mandatory directives that may have existed in the FMP, the district court found that the Park had properly used an information officer to disseminate information and that the Park had properly posted current fire information on available websites, as required by Table 13. *Reed*, 22-5493, R.87, PID 3518-19. But the district court found that the government did not present sufficient evidence to establish that the Park satisfied the requirement to "inform" "park neighbors" of the Fire. *Id.* On appeal, the government represents that "[i]n the event this litigation proceeds, the government stands ready to present the additional evidence that the district court believed necessary for justifying a dismissal on discretionary-function grounds." Appellee Br. at 54, n. 16. But this evidence is not before us and we leave any consideration of this evidence to the district court.

At oral argument, counsel for Plaintiffs suggested that we permit discovery to move forward and allow the government to present this new evidence on summary judgment. And in their briefing, Plaintiffs argue that the government should not be permitted to present this evidence at the motion to dismiss stage because doing so would allow the government "a fifth attempt to dismiss Plaintiffs' claims." Reply Br. at 33 n.7. But because of the FTCA's unique waiver of sovereign immunity, the applicability of the discretionary-function exception is a jurisdictional issue, and if Plaintiffs "cannot identify a waiver [of immunity], [their] claim[s]

must be dismissed on jurisdictional grounds." *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000). Accordingly, this jurisdictional issue must be resolved as a threshold question before the case proceeds broadly on the merits. This is not to say, however, that the jurisdictional issue requires no factual development, or that discovery is unwarranted on this threshold issue. *See Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) ("In reviewing [a factual attack on subject matter jurisdiction], a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts.").

Further, even assuming that neither Section 3.3.2 nor Table 13 sets forth mandatory directives, the government is not shielded from liability unless both prongs of the discretionary-function test are satisfied. The second prong requires "a court to evaluate 'whether the conduct is of the kind that the discretionary function exception was designed to shield' from liability." *Kohl v. United States*, 699 F.3d 935, 940 (6th Cir. 2012) (quoting *Gaubert*, 499 U.S. at 322-23). Specifically, "[t]he discretionary-function exception is meant to 'prevent judicial second-guessing of . . . administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Id.* at 940 (quoting *S.A. Empresa*, 467 U.S. at 814). Because the district court found that Section 3.3.2 and the requirements of Table 13 created mandatory directives, it did not reach the second prong of the discretionary-function test.

Accordingly, on remand the district court should permit further factual development as it deems appropriate and 1) determine, consistent with this opinion, whether Section 3.3.2 and Table 13 set forth mandatory directives; 2) if necessary, apply *Gaubert*'s second prong; and 3) readdress the government's factual challenge in light of any additional facts provided by the parties.

## V.

The government also urges us to affirm the district court's dismissal on the independent alternative basis that Plaintiffs' claims are barred by the FTCA's misrepresentation exception. *See* 28 U.S.C. § 2680(h). Because we agree with the district court that Plaintiffs' failure-to-warn claim sounds in negligence, and not in misrepresentation, we decline to affirm the district court on this alternative basis. *Cf. United States v. Neustadt*, 366 U.S. 696, 711, n.26 (1961).

In support of their misrepresentation-exception argument, the government argues for the first time that "[p]laintiffs have failed to allege any breach of state-law duty [by the NPS] distinct from" the NPS's obligations under federal law. Appellee Br. at 60. Because this argument was raised for the first time on appeal and was never presented to the district court it is not properly before us.

## **CONCLUSION**

For the foregoing reasons we VACATE the order of dismissal and REMAND for further proceedings consistent with this opinion.

―――――――――

## **CONCURRENCE**

―――――――――

CLAY, Circuit Judge, concurring.  Plaintiffs sued the United States for negligence pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80.  The district court dismissed their claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for failure to satisfy the FTCA's presentment requirement, 28 U.S.C. § 2675(a).  For the reasons set forth below, the Court should reverse.

## **I.  BACKGROUND**

This consolidated appeal arises from six lawsuits filed under the FTCA.  Each case concerns damages caused in 2016 by the Chimney Tops 2 Fire ("Fire").  The Fire began in the Great Smoky Mountains National Park ("Park") and then spread into surrounding communities, causing 14 deaths and over $1 billion in damages.  Plaintiffs lost property and loved ones because of the Fire.  After the Fire, Plaintiffs filed administrative claims with the Interior Department.  The Interior Department did not act upon those claims, so Plaintiffs initiated their lawsuits against the United States.  The sole claims at issue in this appeal are Plaintiffs' failure-to-warn claims.

Park officials first spotted the Fire in the Park on November 23, 2016.  Five days later, the Fire escaped the Park's boundaries and made its way into Sevier County and the City of Gatlinburg.  Plaintiffs' failure-to-warn claims rest upon allegations that Park officials failed to follow the Park's Fire Management Plan ("FMP"), thereby failing to warn the public of the pending danger.

Under the FMP, "Park neighbors, Park visitors and local residents will be notified of all planned and unplanned fire management activities that have the potential to impact them."  FMP, *Reed, et al. v. United States, et al.*, 426 F. Supp. 3d 498 (E.D. Tenn. 2019) ("*Reed*"), R. 1-7, Page ID #471.  The FMP "outline[s] mitigation actions required to protect values at risk and to ensure the safety of park staff and visitors as well as the neighboring public."  *Id.* at Page ID #498.

Those mitigation actions include: (1) posting "current fire information on websites as available;" (2) informing "park neighbors of wildland fires;" and (3) using "information officer and/or park public affairs to disseminate information." *Id.* at Page ID #498–99. Plaintiffs allege that Park officials failed to take those required mitigation actions.

After the Fire, Plaintiffs timely presented their damages claims to the Interior Department using standard SF-95 forms provided on the Department of Justice's website. Although Plaintiffs' description of damages on their SF-95 forms varied, the bases of the claims were substantially similar.

The Interior Department did not act on the claims, so Plaintiffs commenced their respective lawsuits. Before the district court, the government filed four successive motions to dismiss, the first three of which failed. In the first, the government moved to dismiss for lack of subject matter jurisdiction, arguing that Plaintiffs' claims were *facially* barred by the FTCA's discretionary function exception, 28 U.S.C. § 2680(a). In the second motion, the government argued that Plaintiffs' claims were *factually* barred by the discretionary function exception. In the third motion, the government argued that Plaintiffs' claims were barred by the FTCA's misrepresentation exception, 28 U.S.C. § 2680(h).

The government prevailed on its fourth and final motion. Through that motion, the government argued that Plaintiffs had not properly "presented" their claims to the Interior Department. *See* 28 U.S.C. § 2675(a). The district court agreed and dismissed the complaints without prejudice for lack of subject matter jurisdiction. The next month, Plaintiffs moved to alter or amend the judgments. The district court denied those motions and Plaintiffs' timely appeals followed.

## II. DISCUSSION

### A. Standard of Review

The Court reviews *de novo* an order dismissing a case under Federal Rule of Civil Procedure 12(b)(1). *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016).

**B. Analysis**

On appeal, Plaintiffs contend that the district court erred when it determined: (1) that Plaintiffs failed to present their claims to the Interior Department; and (2) that the FTCA's presentment requirement is jurisdictional. The government disagrees. The government also seeks affirmance on other grounds, contending that Plaintiffs' failure-to-warn claims are independently barred by the FTCA's discretionary function and misrepresentation exceptions.

**1. Presentment**

Section § 2675(a) of "[t]he FTCA provides that a claimant must first present a claim to the appropriate federal agency and that the agency must finally deny the claim before an action may be brought against the United States." *Knapp v. United States*, 844 F.2d 376, 377 (6th Cir. 1988) (citing 28 U.S.C. § 2675(a)). Congress instituted the presentment requirement "not to make recovery from the Government technically more difficult. Rather, the purpose was to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Exec. Jet Aviation, Inc. v. United States*, 507 F.2d 508, 515 (6th Cir. 1974). With that principle in mind, this Court has observed that § 2675(a) "requires only minimal notice." *Knapp*, 844 F.2d at 379 (quoting *Warren v. U.S. Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 779 (9th Cir. 1984)).

According to the Justice Department's regulation interpreting the FTCA's presentment requirement, a plaintiff need only provide "written notice of an incident, accompanied by a claim for money damages." 28 C.F.R. § 14.2(a). This Court has similarly held that a plaintiff satisfies the FTCA's presentment requirement "if the claimant (1) gives the agency written notice of his or her claim *sufficient to enable the agency to investigate* and (2) places a value on his or her claim." *Douglas v. United States*, 658 F.2d 445, 447 (6th Cir. 1981) (emphasis added) (quoting *Adams v. United States*, 615 F.2d 284, 289 (5th Cir. 1980)). A claimant satisfies the first prong by providing enough information so that "officials could easily have investigated what they needed to know." *Glarner v. U.S., Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994)

(holding that a plaintiff satisfied the first prong by submitting a form stating, "I feel that I am entitled to compensation as a result of [the VA hospital's] negligence.").

In this case, it is undisputed that Plaintiffs timely presented damages claims to the relevant government agency through their SF-95 forms. The issue is whether the SF-95 forms provided enough information so that the agency "could easily have investigated what [it] needed to know." *Id.* A representative SF-95 form stated:

> The U.S. government, through its employees, failed to follow mandatory regulations to monitor and extinguish a fire in the Great Smoky Mountains National Park, thereby allowing it to spread beyond the park boundaries onto claimants' private property, destroying their property.

SF-95, *Reed*, R. 111-1, Page ID #3901. That SF-95 form unquestionably provides written notice of the incident: the Fire; the government's failure to follow mandatory regulations; and the injuries that followed. *See* 28 C.F.R. § 14.2(a). Similarly, because the SF-95 form connects the incident to damages, it gave "the agency written notice of [the] claim sufficient to enable the agency to investigate." *Douglas*, 658 F.2d at 447.

All of the above is sufficient to hold that Plaintiffs satisfied the FTCA's presentment requirement. The lead opinion seems to recognize as much. Inexplicably, however, the lead opinion focuses extensively on allegations that a single park official "touched all aspects of NPS's response" to the Fire. That analysis is misguided. Congress instituted the FTCA's presentment requirement "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Executive Jet*, 507 F.2d at 515 (citations omitted). The lead opinion cites no authority to support the proposition that an agency's internal attribution of responsibility affects whether a plaintiff has met the FTCA's presentment requirement, and it is doubtful that any such authority exists. Indeed, it would be a cruel dereliction of congressional intent to condition satisfaction of the presentment requirement upon an agency's organizational chart— something presumably unknown to the public-at-large and unknown to Plaintiffs when they filed their SF-95 forms.

Plaintiffs herein quite properly provided "written notice of an incident, accompanied by a claim for money damages." 28 C.F.R. § 14.2(a). The demand was clear and unequivocal. That is sufficient to meet the FTCA's presentment requirement. For that reason, I would reverse the district court's judgment.[1] With those reservations in mind, I respectfully concur in the judgment as to the presentment issue, but not in the analysis.

## 2. Discretionary Function Exception

The government contends that Plaintiffs' claims are "independently barred" by the FTCA's discretionary function exception. Under the discretionary function exception, the government is not liable for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). Any claim that falls under the discretionary function exception must be dismissed for lack of subject-matter jurisdiction. *Kohl v. United States*, 699 F.3d 935, 940 (6th Cir. 2012).

To determine whether the discretionary function exception applies, we apply a two-step test. *See United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). The Court first asks "whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice." *Kohl*, 699 F.3d at 940 (quoting *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997)). "If there was such a violation of a mandatory regulation or policy, then the discretionary-function exception will not apply, because 'there was no element of judgment or choice[.]'" *Id.* (quoting *Rosebush*, 119 F.3d at 441). In other words, when the government officials have "no rightful option but to adhere to the directive[,]" the discretionary function exception does not apply. *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

---

[1]We need not address whether the FTCA's presentment requirement is jurisdictional.

If, however, "there was room for judgment or choice in the decision made, then the challenged conduct was discretionary." *Kohl*, 699 F.3d at 940. In such a case, the Court proceeds to the second step of the test and asks whether the challenged conduct was "of the kind that the discretionary function exception was designed to shield from liability." *Id.* (quoting *Rosebush*, 119 F.3d at 441). The discretionary function exception exists to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). If the challenged "action involves choice or judgment that is 'susceptible to policy analysis,' then it falls within the discretionary-function exception." *Kohl*, 699 F.3d at 940 (quoting *Gaubert*, 499 U.S. at 325). When a policy "allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* (quoting *Sharp ex rel. Estate of Sharp v. United States*, 401 F.3d 440, 443 (6th Cir. 2005)).

Importantly, this Court has observed that protocols may allow for discretion as to "*how* and *when* they are to be implemented," while at the same time being mandatory "as to *whether* they are to be implemented." *A.O. Smith Corp. v. United States*, 774 F.3d 359, 367 (6th Cir. 2014) (citing *Navarette v. United States*, 500 F.3d 914, 918 (9th Cir. 2007)).

In this case, Plaintiffs' failure-to-warn claims rests upon an argument that Park officials failed to follow the FMP, thereby failing to warn the public of the pending danger. As is relevant to this appeal, Plaintiffs contend (1) that Park officials failed to follow Section 3.3.2 and Table 13 of the FMP, and (2) that those provisions are mandatory directives. The Court must therefore determine whether those provisions "allowed no judgment or choice." *Kohl*, 699 F.3d at 940 (quoting *Rosebush*, 119 F.3d at 441).

### a. Section 3.3.2

Section 3.3.2 provides that "Park neighbors, Park visitors and local residents *will be notified* of all planned and unplanned fire management activities that have the potential to impact them." FMP, *Reed*, R. 1-7, Page ID #471 (emphasis added).

Where a policy requires an official to make "an antecedent assessment or determination" into whether a "predicate condition exists[,]" that assessment "presents the [official] with a *choice*; does the condition exist or doesn't it?" *Myers v. United States*, 17 F.3d 890, 895–96 (6th Cir. 1994). However, whether to conduct the antecedent assessment is not a choice: the official *must* conduct the assessment. *See A.O. Smith Corp.*, 774 F.3d at 367. Moreover, if the official decides that the "predicate condition exists[,]" then the duties that follow are mandatory. *Myers*, 17 F.3d at 895–96.

Section 3.3.2 includes two mandatory directives. First, it directs Park officials to conduct the antecedent assessment, *i.e.*, to determine whether their fire management activities had the potential to impact Park neighbors, Park visitors, and local residents. *See A.O. Smith Corp.*, 774 F.3d at 367. Second, if Park officials determine that their fire management activities have the potential to impact Park neighbors, Park visitors, and local residents, then Section 3.3.2 requires that they notify those parties. *See Myers*, 17 F.3d at 895–96. Accordingly, the only aspect of Section 3.3.2 that is discretionary is the *result* of the antecedent assessment. *See id.* Therefore, the discretionary function exception cannot apply to Section 3.3.2 unless the government establishes as a factual matter that Park officials conducted the antecedent assessment and determined that their fire management activities *did not* have the potential to impact Park neighbors, Park visitors, and local residents. *See id.* Such a decision would be discretionary because determining whether the "predicate condition" existed required officials to exercise their judgment.[2] *See id.*

### b. Table 13

Table 13 describes "mitigation actions *required* to protect values at risk and to ensure the safety of park staff and visitors as well as the neighboring public." FMP, *Reed*, R. 1-7, Page ID #498 (emphasis added). Among those required mitigation actions is that park officials "[i]nform park neighbors of wildland fires." *Id.* Plaintiffs allege the government did not inform them about the Fire, thereby violating Table 13's clear directive.

---

[2]In such a case, the district court would then have to apply the second step of the discretionary function exception test to Section 3.3.2. *See Kohl*, 699 F.3d at 940.

Table 13 is a mandatory directive. It states in plain language that Park officials are "required to . . . [i]nform park neighbors of wildland fires." *Id.* Although Table 13 does not "specify *how* and *when*" officials should inform Park neighbors of wildland fires, it is "nondiscretionary as to *whether*" Park officials are required to take such action. *A.O. Smith Corp.*, 774 F.3d at 367 (citing *Navarette*, 500 F.3d at 918).

### c. Facial and Factual Attacks

Having established that Section 3.3.2 and Table 13 contain mandatory directives, it becomes important to examine the government's facial and factual arguments that the discretionary function exception applies to Plaintiffs' claims. "Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties. A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). When reviewing a 12(b)(1) motion based upon a facial attack, "a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.* However, "when a court reviews a complaint under a *factual* attack . . . no presumptive truthfulness applies to the factual allegations." *Id.* When reviewing a 12(b)(1) motion based upon a factual attack, a district court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.* In doing so, the district court "has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.*

When the government makes a facial attack based upon the discretionary function exception, the plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *Carlyle v. U.S., Dep't of the Army*, 674 F.2d 554, 556 (6th Cir. 1982). However, once "a plaintiff has successfully invoked jurisdiction by a pleading that facially alleges matters not excepted by" the discretionary function exception, the burden of showing that the exception applies shifts to the government. *Id.*

In this case, the government filed two 12(b)(1) motions concerning the discretionary function exception. The first was a facial attack. The district court correctly denied that motion.

As discussed above, Section 3.3.2 and Table 13 contain mandatory directives. Because Plaintiffs allege that Park officials failed to follow those directives, the government's facial attack fails. *See Kohl*, 699 F.3d at 940.

The second 12(b)(1) motion invoking the discretionary function exception was a factual attack. The district court denied that motion as well. Because the motion made a factual (as opposed to facial) attack, the government had the burden of showing that the discretionary function exception applied. *Carlyle*, 674 F.2d at 556. The district court held that the government failed to furnish sufficient evidence to show that Park officials complied with Section 3.3.2 and Table 13's mandatory directives.

Before the district court, the government relied on three pieces of evidence to prove that it complied with Section 3.3.2 and Table 13, none of which is sufficient. First, it pointed to press releases and an E-Blast. However, the government only stated that "the press releases were sent 'to the Park's list of press release recipients, which included more than 50 media outlets, 25 government entities, 50 private organizations, and other individuals.'" Mem. Op., *Reed*, R. 87, Page ID #3520. Similarly, the government only provided that Park officials sent the E-Blast to "media outlets and other organizations and individuals." *Id.* The district court correctly determined that the government "cannot rely on the press releases and an E-Blast to satisfy a requirement to notify 'Park Neighbors, Park visitors, and local residents' when it doesn't tell the [district court] where the press releases and E-Blast were sent to." *Id.*

Second, the government relied "on the information posted to websites and social media accounts." *Id.* But, as the district court correctly held, "posting information on websites and social media accounts is not the same as notifying 'Park neighbors, Park visitors and local residents . . . of all planned and unplanned fire management activities that have the potential to impact them.'" *Id.* (alteration in original). Finally, the government described communications between Park officials and Gatlinburg officials, but it failed to furnish a single declaration or deposition testimony from any relevant official to support its description. The government therefore failed to satisfy its burden of showing that the evidence establishes as a factual matter that the discretionary function exception applies.

Accordingly, the district court correctly denied both motions to dismiss concerning the discretionary function exception. It is unclear whether the lead opinion agrees. That opinion does not address the difference between facial and factual challenges, nor does it discuss how the burden shifts depending on the nature of the challenge. It correctly determines that the district court wrongly held that "Section 3.3.2 was not discretionary solely because it does not include the exact 'if/then' language that the Court highlighted in *Myers*," but fails to rule on whether the government's facial challenge succeeds. As to the factual challenge, the lead opinion determines that "remand is appropriate for the district court to consider this evidence related to the government's factual discretionary-function argument." In so doing, the lead opinion ignores that the government had its chance to present such evidence and failed carry its burden. *See Carlyle*, 674 F.2d at 556.

Unlike the lead opinion, I would expressly hold that the district court correctly denied both 12(b)(1) motions that invoke the discretionary function exception. Such a holding would not foreclose the government from furnishing evidence at a later time to show that Park officials complied with Section 3.3.2 and Table 13.

### 3. Misrepresentation Exception

The lead opinion correctly asserts that the government's argument concerning the misrepresentation exception fails because Plaintiffs allege negligence, not misrepresentation. *See United States v. Neustadt*, 366 U.S. 696, 711 n.26 (1961). However, the government now argues for the first time that Plaintiffs "failed to allege any breach of state-law duty [by Park officials] distinct from" their obligations under federal law. The government should not be given *carte blanche* to pursue a new misrepresentation exception argument via a fifth motion to dismiss.

### III. CONCLUSION

For the reasons set forth above, I would **REVERSE** the district court's judgment as to the presentment issue and **REMAND** for further proceedings consistent with this opinion. I would likewise reject the government's invitation to affirm on alternate grounds concerning the discretionary function and misrepresentation exceptions.

_____

**CONCURRENCE**

_____

THAPAR, Circuit Judge, concurring.   The lead opinion thoughtfully and correctly resolves this sad, unusual, and highly fact-bound appeal.  I write to offer one clarification and express one small disagreement.

*First*, the plaintiffs barely satisfied the FTCA's presentment requirement.   Everyone agrees that requirement is meant to give the government the opportunity to investigate potential claims. *See Copen v. United States*, 3 F.4th 875, 882 (6th Cir. 2021).  Here, the plaintiffs didn't tell the government they were bringing failure-to-warn claims, but they did make other claims.  And those claims would have led the government straight to Greg Salansky.  He managed all aspects of the government's response to the Fire:  monitoring, extinguishing, and warning.  So even though the plaintiffs didn't say they were bringing failure-to-warn claims, their claims were sufficient to trigger an investigation into Salansky's wide-ranging responsibilities.  This was a risky strategy, but it worked for these plaintiffs.  Future plaintiffs shouldn't take the same risk.

What about Judge Clay's argument that these kinds of cases shouldn't depend on "an agency's organizational chart"?  Op. of Clay, J., at 24.  I agree.  And there's a simple way to avoid that problem:  plaintiffs should clearly state what claims they plan to bring.  That way, the government can fully investigate, and the case won't depend on organizational charts.

*Second*, I cannot join one aspect of the lead opinion.  According to the lead opinion, Section 3.3.2 of the Fire Management Plan imposes two requirements:  officials must (1) assess fire-management activities and (2) notify community members if any such activities may affect them.  In my view, Section 3.3.2 supports the second requirement but not the first.

Start with the text.  "Park neighbors, Park visitors and local residents will be notified of all planned and unplanned fire management activities that have the potential to impact them." R. 1-7, Pg. ID 471.  The plain language imposes a notice requirement.  If a fire has the potential to impact visitors and local residents, park officials must notify them of the fire.

The problem with the lead opinion is that it imposes an additional assessment requirement that's not in the text. Respectfully, that's not our role. We interpret the requirements provided in the text—we can't add new ones. *See Jude v. Comm'r Soc. Sec.*, 908 F.3d 152, 161 (6th Cir. 2018). *Myers v. United States*, the case the lead opinion cites, followed this basic rule. 17 F.3d 890 (6th Cir. 1994). The regulations and statutes in that case explicitly required inspections "at least four times a year" or more often if the mine was "especially hazardous." *Id.* at 893. By contrast, here there is no mandatory assessment provision like the inspection provision in *Myers*.

Since we are not at liberty to add an assessment provision, I cannot concur in that portion of the lead opinion. But in all other respects, I agree with its resolution of this difficult and fact-intensive appeal.